GREEN, Respondent, vs. TOWN OF NEBAGAMAIN, Appellant.

*February 20—March 11, 1902.*

*Highways: Defects: Notice: Personal injuries: Negligence: Witnesses: Physicians and surgeons: Privileged communications: Statutes: Instructions to jury: Excessive damages.*

1. Where it appears that a defect in a bridge was the result of natural rot and decay, long use, the duty of inspection from time to time and the duty to repair when necessary are implied.

2. A failure to perform such duty is negligence, and the municipality cannot escape liability therefor because its officers did not have notice of the precise defect which caused the accident.

3. Under sec. 4075, Stats. 1898, providing that no physician shall be compelled to disclose any information acquired in his professional capacity, which was necessary to enable him to prescribe for a patient, it is not error to refuse to allow the physician, who attended plaintiff during the eleven days immediately after an injury, to testify as to her condition and symptoms as disclosed by his examination and observation, even though plaintiff had testified in her own behalf in respect thereto.

4. Where a physician, while attending a patient, calls in another physician, who was present at the examination of the patient, but took no part therein, and did not prescribe, such visiting physician is, *pro hac vice*, an attending physician, and hence precluded from disclosing any information thus acquired against the objection of the patient.

5. Sec. 1339, Stats. 1898, as amended by ch. 305, Laws of 1899, provides that no action shall be maintained by a husband on account of injuries received by a wife, but gives no right of action to the wife for loss of her services or expenses incurred. In an action for personal injuries to a married woman, sustained by reason of a defective highway, it was *held* that a verdict is excessive, where, by the instructions given, the jury were left to infer that they were at liberty to allow the wife damages for the loss of her services and the expenses of her sickness, and they have evidently done so.

APPEAL from a judgment of the superior court of Douglas county: CHAS. SMITH, Judge. *Reversed.*

This action was commenced April 30, 1900, to recover damages for personal injuries sustained by the plaintiff November 22, 1899, by reason of a defect in the public highway. It appears that the plaintiff resided upon the highway in question, which ran east and west; that about one mile east from her home there was a public highway, running north and south; that about two miles south of that corner there was a place called "Solon Springs;" that about thirty-five rods west of the point where the road so turned there was a bridge or culvert over a small stream of water, built of poles laid on stringers about three feet above the water; that, about

one o'clock on the day named, the plaintiff started alone from
her home with a lumber wagon drawn by two horses, for
Solon Springs. In addition to the requisite statutory notices,
the complaint, as amended, alleges, among other things, in
effect, that the poles and stringers of the culvert had become
old and rotten, and some broken; that, by reason of the rotten
and broken condition of the bridge, when the plaintiff had
driven along the highway to the point of insufficiency in the
bridge or culvert mentioned, and while the horses were upon
the bridge, the poles alongside of the hole mentioned broke
under the horses' feet and fell to the bottom of the creek;
that because thereof the horses thereupon struggled and
plunged forward out of the hole, and immediately thereafter
the front wheels of the wagon in which the plaintiff was rid-
ing were suddenly drawn into the hole caused in the bridge
by the broken poles, and fell about three feet, whereby the
plaintiff was thrown violently upon the edge of the wagon
box and then out upon the ground, under the feet of the
horses, and suffered a fracture of two of her ribs, and was
otherwise greatly injured about the body and limbs, and suf-
fered a severe shock to her nervous system, and received other
severe and painful injuries to her person.

The defendant answered by way of denials and admis-
sions, and, among other things, to the effect that at the time
of the accident there was a hole in the bridge or culvert men-
tioned, but that it had not existed to exceed two days prior
to the accident, and that the defendant's officers had no notice
or knowledge thereof.

At the close of the trial the jury returned a special verdict
to the effect (1) that November 22, 1899, the plaintiff was
injured by the breaking down of a bridge in a highway in
defendant town at the point described in the complaint and
notice mentioned; (2) that said highway at that point was
defective and unsafe for the purpose of public travel by rea-
son of the condition of said bridge; (2½) that the defective

and unsafe condition was such that it would have been discovered by the officers of the town having highways in charge, had they exercised reasonable and ordinary care; (3) and such defective condition had existed for such length of time that such officers would have discovered and remedied the defect before the accident, had they exercised reasonable and ordinary care; (4) that such defective and unsafe condition of the highway was the proximate cause of the injury complained of; (5) that the plaintiff was not chargeable, under all the circumstances of the case, with want of ordinary care that contributed proximately to cause the injury complained of; (6) that $1,350 would compensate the plaintiff for the injuries she received. From the judgment entered thereon in favor of the plaintiff for the amount stated, the defendant brings this appeal.

For the appellant there was a brief by *Carl M. Wilson,* attorney, and *W. M. Steele,* of counsel, and oral argument by *Mr. Steele.*

For the respondent there was a brief by *Crownhart & Foley* and *Geo. C. Cooper,* and oral argument by *C. H. Crownhart.*

CASSODAY, C. J.   1. It is contended that the evidence is insufficient to sustain findings of the jury Nos. 2½ and 3, to the effect that the officers of the town failed to exercise reasonable and ordinary care in discovering and remedying the defect in the bridge or culvert before the accident. There is plenty of evidence that the defect was the result of natural rot and decay. That implies long use, and the duty of inspection from time to time to repair when necessary. A failure to perform such duty is negligence on the part of those charged with the duty. In such a case the municipality cannot escape liability because its officers did not have actual notice of the precise defect which was the cause of the accident. *Spearbracker v. Larrabee,* 64 Wis. 573; *Paine v.*

*Eastern R. Co.* 91 Wis. 346, 347; *Grimm v. Washburn,* 100 Wis. 229; *McHugh v. Minocqua,* 102 Wis. 291; *Mauch v. Hartford,* 111 Wis. 40.

2. Error is assigned because the court refused to allow the defendant to prove by Dr. James, who attended the plaintiff as her physician during the eleven days she was at Solon Springs, and once after she went home, three or four weeks afterwards, against the objection of the plaintiff, as to whether he found, from his examination of the plaintiff, any bones broken, or any fractures, bruises, swellings, dislocations, or indications of injury, and whether the plaintiff was able to retain medicine and nourishment on her stomach, or vomited or spit blood, or whether her bowels moved the second day after the injury. The information thus sought to be elicited was manifestly necessary to enable the witness to prescribe for the plaintiff as her physician; and hence, under the statute, he could not be compelled to disclose any such information which he may have acquired in so attending the plaintiff in a professional character. Sec. 4075, Stats. 1898. This court has expressly held that "the object of [that statute] was to protect the patient, and, construing that section according to its spirit and intention, a physician can neither be compelled nor allowed to disclose such information in court without the consent of the patient." *Boyle v. N. W. M. R. Asso.* 95 Wis. 312, 322, 323. Mr. Justice PINNEY there said:

"For whose benefit was this provision intended? Clearly, for the benefit of the patient, whose interests, reputation, and sensibilities may be injured and grossly outraged by its disclosure. . . . The object of the section, therefore, was to protect the patient, to whom protection was so important, and not the physician, to whom it was quite unimportant, from the consequences of such disclosure."

Such ruling has frequently been followed since. *Bryant v. Pierce,* 95 Wis. 341; *Kenyon v. Mondovi,* 98 Wis. 53; *In re Bruendl's Will,* 102 Wis. 47; *McGowan v. Supreme Court*

*I. O. F.* 104 Wis. 173, 186; *Shafer v. Eau Claire,* 105 Wis. 244. Counsel contends that, because the plaintiff testified in her own behalf as to her condition while she was so attended by Dr. James, she had thereby waived her right to exclude Dr. James from testifying on the same subject. If such a rule were to prevail, it would destroy the privilege secured by the statute, or preclude the patient from testifying in her own behalf. There may be adjudications in other jurisdictions, under different or even similar statutes, holding otherwise, but, if so, we decline to follow them.

3. Error is assigned because the court refused to set aside the verdict and grant a new trial on the ground of newly discovered evidence, in the person of one Dr. Short, who was a physician and had practiced medicine at Solon Springs prior to the accident, and had acted as the plaintiff's physician, but who had, two days before the accident, sold out his business to Dr. James, with the view of moving away from there, and who did soon thereafter move away from there, and who had acquired certain information in respect to the condition of the plaintiff five days after the accident, under the following circumstances: A Dr. Quinn, of the city of Superior, was called to Solon Springs five days after the accident to treat the plaintiff for the injuries she had so received, in a professional capacity, as physician and surgeon, and made an examination of her, and prescribed for and treated her as his patient. On reaching Solon Springs, he called on Dr. Short, and requested Dr. Short to accompany him upon his proposed examination of the plaintiff. In compliance with such request, Dr. Short did so, and thereupon they both went to the house where the plaintiff was stopping; and Dr. Quinn, in the presence of Dr. Short, who was thus called in as another physician, made an examination of the plaintiff, and prescribed treatment for her as her physician, and Dr. Short made no examination, and did not remain at the house

after Dr. Quinn left. In view of what has been said in regard to excluding the testimony of Dr. James, it is very obvious that, had Dr. Quinn been offered as a witness on the part of the defendant, his testimony as to what he learned upon such examination might have been properly excluded upon the same theory. The same is true in respect to the proposed testimony of Dr. Short. He had "been called in as another physician" by Dr. Quinn, an attending physician. We must hold that Dr. Short was, *pro hac vice,* an attending physician, and hence precluded from disclosing any information thus acquired, against the objection of the plaintiff.

4. It is claimed that a new trial should have been granted because the damages are excessive. The plaintiff testified to the effect that she remained at Solon Springs eleven days; that when she first got there she was suffering so much she could not tell where she was hurt most; that she had always felt pain on her side and ribs; that there did not seem to be any external injury that she could observe; that she had a continual flowing and vomiting, which the doctor could not stop; that her bowels did not move for nine days; that she had bleeding at the lungs; that after she got home the pain continued most all the time day and night; that she was confined to her bed about six weeks, and then was able to be around, but was taken worse, and went to Superior for treatment by a doctor there from January 16, 1900, to May 17, 1900,—under the care of a doctor all the time; that prior to the injury her health was good, and she did the general work that a man would do on the farm; that her husband was not able to work, and that she had not been since the injury; and that she was thirty-two years old. The court charged the jury on the question of damages as follows:

"You should assess such sum as, in your judgment, will fairly compensate her for what she has suffered in physical pain and discomfort. So far as she has been incapacitated

to work by reason of the accident, or there has been expense incurred for medical attendance, they are matters concerning her husband, for which he may complain if he sees fit."

And then he added:

"So far, gentlemen, as the court intimated that the husband would have a course to pursue for loss of her services, and for his expense in medical attendance,—so far as the court intimated that,—the court retracts it, as not being present law."

Such explanatory statement left the jury to infer that they were at liberty to allow the plaintiff damages for her loss of services and the expenses of her sickness. Damages for such loss of services and expenses were formerly recoverable by the husband, and not by the wife. *Hunt v. Winfield,* 36 Wis. 154. The statute of 1881 took from the husband all right to or control over an action for any injury to his wife's person or character, and all right to or interest in any judgment recovered therein. *Shanahan v. Madison,* 57 Wis. 276; *Selleck v. Janesville,* 104 Wis. 570, 576; *McKeague v. Green Bay,* 106 Wis. 577. The "present law" mentioned by the trial judge in his explanation quoted manifestly referred to the recent amendment, which provides "that no action shall be maintained by a husband on account of injuries received by the wife." Sec. 1339, as amended by ch. 305, Laws of 1899. But that statute did not give the wife any right of action for such loss of services or expenses. Under the explanatory charge quoted, the jury were likely to include, and probably did include, in their verdict, damages for such loss of services and expenses. We must hold that the damages are excessive. The plaintiff should not be allowed to recover more than $1,000.

*By the Court.*—The judgment of the superior court is reversed, and the cause is remanded for a new trial, but with the option on the part of the plaintiff, to be exercised within thirty days after the *remittitur* from this court is filed in the trial court, to remit, in writing, from the verdict, all

damages in excess of $1,000, and file such remission with the clerk of the trial court, in which event judgment is to be entered thereon for the plaintiff for $1,000 damages, and the costs and disbursements in the superior court.