THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK

*v.* OWEN.

Opinion delivered February 23, 1914.

1. EVIDENCE—PHYSICIANS—COMPETENCY.—Kirby's Digest, § 3098, which provides that a physician shall not be allowed to testify as to information acquired from his patient, in a professional character, was enacted as a matter of public policy to prevent physicians from disclosing to the world the infirmities of their patients, without their consent.   (Page 559.)

2. EVIDENCE—ATTENDING PHYSICIAN—COMPETENCY TO TESTIFY.—Deceased made application for life insurance, and the regular physician invited another physician to visit the insured with him for a joint examination. *Held*, the assisting physician is within the spirit of the statute, making the testimony of an attending physician incompetent, and he was properly prohibited from testifying as to the deceased's state of health at the time of his examination.   (Page 560.)

3. APPEAL AND ERROR—COMPETENCY OF WITNESS—EXCLUSION OF TESTIMONY—HARMLESS ERROR.—Where the record does not show expressly or by necessary implication, that the court sustained an objection to a question asked a witness, on the ground of the incompetency of the witness, the refusal of the court to permit counsel to propound the question is not prejudicial error, where it does not appear what was expected to be proved by the witness.   (Page 562.)

4. INSURANCE—LIFE INSURANCE—REPRESENTATIONS BY INSURED—BURDEN OF PROOF.—In an action on a life insurance policy, which expressly provided that all the insured's statements should, in the absence of fraud, be deemed representations and not warranties, the issue of the falsity of insured's representations, is a matter of defense to be pleaded, and the burden of proving the fraud is upon the insurer.   (Page 562.)

5. INSURANCE—LIFE INSURANCE—MISREPRESENTATIONS AND OMISSIONS—VALIDITY OF POLICY.—Where a life insurance policy provided that the answers in the application therefor should constitute representations merely, *held* in an action on the policy that a misrepresentation or omission to answer will not avoid the policy, unless wilfully and knowingly made with intent to deceive.   (Page 564.)

6. APPEAL AND ERROR—ADMISSION OF IMPROPER TESTIMONY—HARMLESS ERROR.—The erroneous admission of incompetent testimony contained in a letter is not prejudicial when the party objecting thereto, by its own testiomny, proved the contents of the letter.   (Page 570.)

7. INSURANCE—LIFE INSURANCE—ATTORNEY'S FEES.—The object of Act of 1905, page 307, allowing a reasonable attorney's fee, in actions on a policy of life insurance, is to permit plaintiff to procure the services of a competent attorney or firm of attorneys, and does not contemplate the employment of two attorneys or two firms of attorneys. (Page 570.)

8. ATTORNEY'S FEES—REASONABLENESS.—In an action on a policy of life insurance, when a recovery of $10,000 was had against the insurance company; *held*, the sum of $1,000 was a reasonable attorney's fee, and where the trial court allowed a fee of $2,000, the judgment will be modified to that extent. (Page 570.)

Appeal from Faulkner Circuit Court; *Eugene Lankford*, Judge; modified and affirmed.

### STATEMENT BY THE COURT.

This is an action upon a life insurance policy on the life of Owen J. Owen. By the terms of the policy, The Mutual Life Insurance Company of New York, upon proof of the death of the insured, promised to pay his executors or administrators the sum of ten thousand dollars. The policy further provides as follows:

"This policy and the application herefor, copy of which is endorsed hereon or attached hereto, constitute the entire contract between the parties hereto. All statements made by the insured shall, in the absence of fraud, be deemed representations, and not warranties, and no such statement of the insured shall avoid or be used in defense to a claim under this policy unless contained in the written application herefor, and a copy of the application is endorsed on, or attached to, this policy when issued."

A. C. Remmel, who was employed in the office of H. L. Remmel, the general agent of the company for the State of Arkansas, solicited the insurance, and a written application therefor was made on the 10th day of February, 1912. The local medical examiner of the insurance company at Conway, Arkansas, where the insured resided, was Dr. George S. Brown. The examination of

the insured, however, was made by Dr. George L. Henderson, of Greenbriar, Faulkner County, who was also medical examiner for the company. The policy was issued on the 26th day of February, 1912, and delivered to the insured. On the 15th day of November, 1912, the insured died suddenly at Hot Springs, Arkansas, of heart disease while he was attending a postmaster's convention at that place. The defendant company admitted the issuance of the policy, and that proof of death had been made in accordance with the terms thereof, but defended on the ground that the insured had made false representations in his application for insurance, which avoided the policy. The insurance company introduced evidence tending to show that at the time the insured made his application for insurance, he was suffering from organic heart trouble, with progressive tendencies, and had been for more than a year prior thereto, and that he knew of this fact. On the other hand, the plaintiff introduced testimony tending to show that the insured had never suffered with organic heart trouble prior to his application for insurance in the defendant company, and that at the time the insurance policy sued on was issued, and the application therefor made, he was in good health, and sound physically.

The evidence will be stated more in detail, under appropriate headings, in the opinion. The jury returned a verdict in favor of the plaintiff, and the insurance company has duly prosecuted an appeal to this court from the judgment rendered.

*Frederick H. Allen, Rose, Hemingway, Cantrell & Loughborough* and *J. C. Clark, for appellant.*

1. The application contained no provision waiving the privilege of a physician to refuse to testify as to information acquired while attending the applicant in a professional character. It was error to exclude the testimony of Doctors McCollum and Smith. 19 Minn. 524; 10 N. Y. Supp. 508, 57 Hun 76; 8 N. Y. Supp. 863, 57 N. Y. Super. Ct. 496; 5 N. Y. Supp. 235; 106 N. Y. 298-304;

129 N. Y. 654, 29 N. E. 951; 112 N. Y. 515; 77 N. Y. 564; 31 Ark. 685; 92 S. W. 363.

2. The evidence clearly discloses that Owen practiced intentional deception in making his application, and the court erred in holding that his misrepresentations as to attendance by a physician did not vitiate the policy. 58 Ark. 538; 72 Ark. 620; 58 Hun 366; 12 N. Y. Supp. 172; 77 Ill. App. 440; 26 N. E. 230, 153 Mass. 176; 9 Atl. 766, 49 N. J. L. 587; 36 App. D. C. 8; 42 N. Y. S. 228; 69 S. E. 936; 81 S. W. 1012; 96 S. W. 778; 60 Fed. 727; 108 Fed. 487; 58 Atl. 502; 64 Atl. 109.

*Samuel Frauenthal* and *R. W. Robins,* for appellee.

1. The trial court correctly ruled that the testimony of Doctor Smith, offered by appellant, was privileged, and there was no error in excluding it. Kirby's Dig., § 3098; 3 Cooley's Briefs on Law of Insurance, § 2135-2137; 112 U. S. 250; 27 L. R. A. (N. S.) 326, note; 80 N. Y. 286; 92 N. Y. 274; 126 Mich. 177; 100 Ind. 92; 98 Ark. 352; 103 Ark. 201; 106 Ark. 91; 7 Am. St. Rep. 409; 67 N. Y. 185; 25 Utah 220. The rule applies to consulting physicians, as well as to the family physician or the one employed by the patient. 103 N. Y. 573, 57 Am. Rep. 570; 53 Hun (N. Y.) 637; 113 Wis. 508; 17 Am. St. Rep. 552-558; 148 N. Y. 88; 123 Ind. 384; 5 Hun (N. Y.) 1; 24 Hun (N. Y.) 43.

No prejudice is shown on account of the exclusion of this testimony, because appellant has failed to show what it could prove by Doctor Smith. 92 Ark. 509; 105 Ark. 230-233.

As to Doctor McCollum, we think he was permitted to testify fully. However, in his case also appellant has not shown what it expected to prove by him.

2. The policy was not vitiated by Owen's answer as to attendance by a physician, even if it be deemed to be in the application for the policy. By the terms of the policy itself, the answer was only a representation, and not a warranty.

To avoid a policy for misrepresentation, the false

statement must have been made wilfully and with intent to deceive. 105 Ark. 101; Cooley's Briefs, § 1956.

The policy specifically provides that the policy itself and the application therefor should constitute the entire contract between the parties. It thereby excluded any other paper or document, including the medical examination where alone the representation appears to which objection is made. 108 Ark. 511; 96 Ark. 495-498; 89 Ark. 283.

3. There was no error in admitting the Remmel letter in evidence; but if it was improperly admitted no prejudice resulted because the matters contained therein were testified to by Mr. Remmel without objection, and were not contradicted. 74 Ark. 417; 76 Ark. 277; 77 Ark. 74; 88 Ark. 135; 96 Ark. 276; 98 Ark. 61; 99 Ark. 302.

HART, J., (after stating the facts). Dr. George S. Brown was a practicing physician at Conway in 1911 and 1912, and attended Owen J. Owen, as a physician, whenever he was sick. In 1911, on May 11 and May 27, he examined and prescribed for Owen. On May 28 and May 29 he visited him each day. On May 31st he visited him. On June 22 and 23, each, he prescribed for him. He also prescribed for him on the 9th of August and the 14th day of October. This was during the year 1911. On the 18th of February, 1912, he visited the insured, at night, as a physician. On May 31, 1911, when Doctor Brown went to see the insured, he took Dr. Morgan Smith, of Little Rock, with him. Doctor Smith had gone to Conway to deliver a lecture on public health, and was a guest of Doctor Brown. Doctor Brown invited Doctor Smith to go with him to see his patients, and Doctor Smith accompanied him and was present when he examined and prescribed for the insured. The court held that both Doctor Brown and Doctor Smith were incompetent to testify in the case.

It is conceded by counsel for the insurance company that the court correctly held as to Doctor Brown, but they assign as error calling for the reversal of the judg-

ment the action of the court in refusing to permit Doctor Smith to testify.

At common law, there was no privilege as to communications between physician and patient, but now the statutes of most of the States forbid the disclosure by a physician, against the will of a patient, of communications from the patient or information concerning the patient acquired by the physician in his professional capacity. Section 3098 of Kirby's Digest, is as follows:

"No person authorized to practice physic or surgery, and no trained nurse, shall be compelled to disclose any information which he may have acquired from his patient while attending him in a professional character, and which information was necessary to enable him to prescribe as a physician, or to act for him as a surgeon or trained nurse."

The purpose of section 3098 of Kirby's Digest is to cover the relation of physician and patient with the cloak of confidence, and thus to allow a greater freedom in their communications to each other in regard to matters touching the disease of the patient. Such statutes are enacted as a matter of public policy to prevent physicians from disclosing to the world the infirmities of their patients.

In the case of *Renihan* v. *Dennin,* 103 N. Y. 573, 57 Am. Rep. 770, 9 N. E. 320, information obtained by a physician who was requested by an attending physician to be present for consultation relative to his patient's disease and treatment was held privileged. In *Raymond* v. *Burlington, C. R. & N. Rd. Co.,* 65 Iowa 153, 21 N. W. 495, a communication to a physician's partner, in his presence, was also held to be privileged. In the case of *Green* v. *Nebagamain,* 113 Wis. 508, 89 N. W. 520, where a physician requested by another physician to accompany him upon his examination of a patient, and did so, the examination being made by the latter physician in the presence of former, who took no part in it, it was held that, having been called in by the attending physician, he was thereby rendered *pro hac vice* an attending

physician, and hence precluded from disclosing any information thus acquired, against the objection of the patient. Other cases bearing on the question may be found in the briefs of the respective counsel to this suit, and in the case note to 16 L. R. A. (N. S.) 886.

It is true that Doctor Smith did not visit the insured for the purpose of personally treating him, but he did so in his capacity as a physician, at the request of Doctor Brown, to assist him in diagnosing the case. He went there for the express purpose of examining the patient, at the instance of his attending physician. It was the intention of Doctor Brown to use any knowledge that he might acquire of the patient's condition as the result of the joint examination of himself and Doctor Smith. Hence it may be said that Doctor Smith, while he went there as a matter of courtesy to Doctor Brown, also went for the purpose of assisting him in diagnosing the disease and treating the patient. This, we think, clearly brings him within the spirit of the statutes, and prohibits him from disclosing any knowledge of the patient's condition thus acquired, without the consent of the insured's representatives in this suit.

It is next contended by counsel for defendant that the court erred in refusing to allow Doctor McCollum to answer a question propounded to him. Doctor McCollum was introduced as a witness by the defendant, and testified that he was medical examiner for the Missouri State Life Insurance Company, and that some time during the warm weather in 1911, Owen came to his office in the city of Conway to be examined for life insurance; that he examined him and found that he had organic heart disease of a character to become progressive; that he told him he had heart trouble, and that he would not recommend him for insurance; that Owen said he did not want to be turned down by the life insurance company, and discontinued his application; that Owen did not ask him to treat him as a physician, and that he did not do so. Doctor McCollum further stated that Owen came to him several times after that, and would say he was feeling all right,

and asked him to examine his heart again; and that he did so on several occasions. He further stated that Owen did not ask him for any treatment by him, and that he did not prescribe for him. After being asked a number of questions by both counsel for plaintiff and for defendant, counsel for defendant asked him the following question:

"You never did attempt to prescribe for him in any way after that?"

(By Mr. Frauenthal, for plaintiff): "We object."

The witness answered: "No, sir."

(By the court) : "Objection sustained."

(By Mr. Rose, counsel for defendant): "Note our exceptions."

It has been held by this court that where a witness is rejected on the ground of his incompetency, it will be unnecessary on appeal to show what he would have testified, as it will be presumed that the witness would have been rejected, no matter how material the evidence might have been. *Miles* v. *St. Louis, I. M. & S. Ry. Co.,* 90 Ark. 485. Therefore, it is now contended by counsel for defendant that it was not necessary for them to set out the additional facts they intended to prove by Doctor Mc-Collum, because they say the court held that he was not competent to testify, because he was an attending physician within the meaning of section 3098 of Kirby's Digest; but we do not agree with them in this contention. It will be noted that the court had permitted the witness to testify in regard to the condition of the insured, and we do not think that it can be said that the court refused to permit him to further testify on the ground that he was not a competent witness, unless the record expressly showed that his testimony was refused on that ground, or unless such inference must be drawn by necessary implication. The record shows that another physician, whom the insured had met on different occasions and asked whether he had prescribed for the insured in the as to the insured's condition, and, as we have already seen, the court had permitted Doctor McCollum to be introduced by the defendant as a witness, and had per-

mitted him to testify in the case. He had already been asked about his condition, had been permitted to testify examinations he had made of him after the time he had examined him for life insurance, and replied that he had not. It may be that the court sustained an objection to the question quoted above because he thought that counsel were unnecessarily repeating questions to the witness. Be that as it may, we have carefully read the whole testimony of the witness, as disclosed by the record, and are of the opinion that the record does not show expressly, or by necessary implication, that the court sustained the objection to the question quoted on the ground that the witness was incompetent to testify. Therefore, the case falls within the rule announced in *Fletcher* v. *Freeman-Smith Lumber Co.*, 105 Ark. 230, and other cases of like character, where it is held that the refusal to permit appellant to propound certain questions to a witness is not prejudicial error where it does not appear what appellant is expecting to prove by him. In the case at bar, it may be that counsel for defendant thought they had extracted from the witness all the information that they could which was favorable to their client and discontinued his examination on that account. Therefore, under the settled rule that this court will not reverse for error that does not appear to be prejudicial, we hold that the court did not err in sustaining the objection, because counsel for defendant do not set out in the record what further facts, if any, they expected to prove by the witness so that this court might judge of its materiality.

The most serious contention made by counsel for defendant (and that which has given us the greatest concern), is that the court erred in holding that the policy was not vitiated by the alleged misrepresentations as to attendance by a physician. As we have already seen, Doctor Brown was the examining physician for defendant at Conway, where the insured resided, but the examination was made by Doctor Henderson, another examining physician for the defendant who resided at Greenbriar, a point fourteen miles distant from Conway, in the

interior and off the railroad.  The application of the in-
sured is dated at Conway, February 10, 1912.    The med-
ical examination is dated at Greenbriar, February 19,
1912.   Doctor Henderson testified at the trial and stated
that the examination was actually made at Conway; that
he was an old boyhood friend of Owen, and that Owen
said to him that he wished him to examine him because
he desired him to earn the fee; that he made a thorough
examination of Owen, and did not discover any symp-
toms whatever of heart trouble; that he was not pre-
pared to make a sufficient test of Owen's urine at Con-
way, and, on that account, took some of it home in a
bottle and made the test there; that after he had con-
cluded his test of the urine he sent in the report of his
medical examination from Greenbriar.   One of the ques-
tions appearing in the medical examination was the fol-
lowing:

"State every physician who has prescribed for you,
or whom you have consulted in the past five years?
"Yes."

"Dr. G. S. Brown, Conway, 1902.
"F. M. Mount, Hot Springs, 1908."

The name of Doctor Brown was subsequently erased,
and counsel for defendant claim that his name was erased
because the undisputed evidence shows that Owen told
the medical examiner that he had not consulted him
within five years prior to the date of his medical exam-
ination for life insurance.   For the present, we will con-
sider this contention of counsel for defendant to be cor-
rect.   It will be noted that Doctor Brown had testified
that he had treated and prescribed for Owen on several
occasions during the year 1911.   Counsel for defendant
contend that even if Doctor Brown had only visited Owen
as a physician from time to time in 1911 for temporary
disturbances, the defendant had a right to know this in
order that it might make such further investigations as
it deemed necessary, and that because the insured an-
swered that he had not consulted any one as a physician
during five years preceding his application for insur-

ance, except Doctor Mount, when, in fact, he had also consulted Doctor Brown, such concealment was a material representation, and would defeat the plaintiff's recovery on the policy sued on. In short, they insist that the statement of Owen to the medical examiner that he had not consulted any physician except Doctor Mount for the past five years was the statement of a fact, and not the expression of an opinion, and that therefore, it was a material representation, and, if wilfully false, avoided the policy. They cite several cases in support of their position which we do not deem it necessary to cite or to review in detail, for we have concluded that their contention has been settled adversely to them by the case of *National Annuity Association* v. *Carter,* 96 Ark. 495. In this connection it may be stated that by the express terms of the policy itself, it was provided that all the statements made by the insured should, in the absence of fraud, be deemed representations, and not warranties. The falsity of representations on the part of the applicant for insurance is a matter of defense to be pleaded and proved by the insurer, and the burden of proving them rests on it. In the case of *National Annuity Association* v. *Carter, supra,* the applicant was asked: "Who was the last physician who attended or prescribed for you?" and answered: "Johnson Patrick, Jonesboro, Arkansas, 1893, for pneumonia." There was testimony introduced on the part of the insurance company to show that the insured went to a hospital in St. Louis during the year 1907, prior to his application. Now, it is obvious that if he went to a hospital subsequent to the time he stated in his application a physician had attended or prescribed for him, that he did not state the truth in his application; for, if he went to a hospital, he was necessarily under the treatment of a physician. The court in that case, however, held that this evidence did not avoid the policy, because it did not show that his ailment was of such a serious nature as to materially affect his health or longevity. So, also, in the case of the *Metropolitan Life Insurance Company* v. *Johnson,* 105 Ark.

101, the court held that where answers in an application for life insurance constitute merely representations, a misrepresentation or omission to answer will not avoid the policy unless wilfully or knowingly made with intent to deceive.

In the application of this principle to the instant case, it may be said that if Owen made a false answer as to what physicians he had consulted in the five years previous to his application and examination for life insurance, and at the same time knew, or had sufficient reason to believe, that he was afflicted with a serious ailment, which said physician knew he had, this would be a fraud on the insurance company, and would vitiate his policy. If Owen had consulted a reputable physician, and had been told that he was suffering from heart trouble at a time so near the date of his examination for life insurance as to rebut and repel the idea of forgetfulness or good faith on his part, concealment of such fact would be material, and would avoid the contract of insurance. So, if it be conceded that the undisputed evidence shows that Owen made a false representation concerning the fact of Doctor Brown attending him during the five years preceding his examination for life insurance in regard to the policy sued on, it can not also be said that the undisputed evidence shows that he was afflicted at the time with organic heart trouble, and that if he had stated to the medical examiner that Doctor Brown had attended him as a physician within the last five years, this would have led to knowledge of that fact on the part of the company. It is true the testimony on the part of the insurance company tended to show that for a year or more prior to his application for life insurance, Owen had organic heart disease, with progressive tendencies, and that he knew of this fact. On the other hand, the medical examiner who examined him for the policy sued on, testified that he made a very careful examination of him, and that he showed no symptoms of heart disease. Other evidence on the part of the plaintiff tended to show that Owen was a strong and robust man, and that his physical

appearance did not show any indication that he was afflicted with an ailment of a serious nature. Therefore, it can not be said that the undisputed evidence showed that Owen was suffering from heart disease at the time he made application for the policy of insurance sued on herein, and that he had information of that fact. *Moulor* v. *Insurance Company,* 101 U. S. 708; *French* v. *Fidelity & Casualty Co.* (Wis.), 17 L. R. A. (N. S.) 1011, at 1018.

The medical examination was dated at Greenbriar February 19, 1912. Doctor Henderson testifies that he made the examination at Conway, and then went to Greenbriar, and made a test of the urine before he sent the report in to his superior at Little Rock. He stated that Greenbriar was fourteen miles in the country. The inference then is that the examination was made before the night of the 18th day of February, 1912, the time when Doctor Brown states he was called to prescribe for Owen. This rebuts the inference that Owen consulted Doctor Brown at a time so near the date of his examination that he could not have forgotten it. The evidence shows that Doctor Brown visited him in May, 1911, and prescribed for him in the fall of that year. It was not shown, however, that these visits and prescriptions were for the treatment of organic heart trouble or other serious ailment. The question of whether Owen concealed the fact that he had consulted Doctor Brown as a physician, or had been treated by him within the past five years, because he feared that a disclosure of such fact would lead to knowledge on the part of the insurance company that he was suffering from organic heart trouble, was submitted to the jury under appropriate instructions, and they were told, in effect, that if they found such to be the fact, it would be a fraud upon the insurance company, and would prevent a recovery on the policy sued on.

Moreover, when the testimony of Doctor Henderson is considered in its entirety, we do not think it can be said that the undisputed evidence shows that Owen made a false statement as to what physicians he had consulted

during the past five years. Doctor Brown, of Conway, had been the family physician of Owen. The medical examination of Owen shows that when he was asked to state every physician who had prescribed for him in the past five years, he gave the name of Doctor Brown. This name was erased by the medical examiner, because, he states, that the date given by Owen showed that he had not consulted Doctor Brown as a physician within the past five years. He also stated, however, that he might have been mistaken, and that Owen might have stated that he had consulted Doctor Brown within the last five years, and that he misunderstood him. It is contended by counsel for defendant that when the whole testimony of Doctor Henderson is considered, it is explanatory and conclusively shows that he erased the name of Doctor Brown because Owen had stated to him that he had not consulted him within the last five years. As evidence of this, they stated that Doctor Henderson had been a life-long friend of Owen, and that this is a strong argument to show that he would place his testimony in as favorable a light as possible to the plaintiff in this case. On the other hand, it is well to be remembered that Doctor Henderson was also the local medical examiner of the insurance company, and might be interested, as such, in concealing any mistakes or negligence that he might have committed in writing down the answers made by the applicant. The credibility, as well as the effect, of his testimony, was a question for the jury. His testimony was given before the jury, and they had an opportunity to examine his manner and appearance on the witness stand and to notice whether or not his answers were evasive or contradictory. Under these circumstances, it can not be said, as a matter of law, that his testimony should have been accepted by the jury as conclusively establishing the fact that Owen made a false statement as to what physicians had attended him during the past five years.

We have not set out the testimony of Doctor Henderson in detail, and to do so would unduly extend this opinion, and could serve no useful purpose. We have care-

fully examined it, and deem it sufficient to say that the court would not have been warranted in telling the jury that no inference was possible to deduce from it other than Owen made a wilfully false statement of a material fact in his medical examination. *Des Moines Life Ins. Co.* v. *Clay,* 89 Ark. 230; *Anthony* v. *Mercantile M. A. Assn.,* 162 Mass. 354; 44 Am. St. Rep. 367.

On this question, at the request of plaintiff, the court gave the following instruction:

"The court instructs the jury that if, in answer to the question in the application as to what physicians attended him, or with whom he consulted in the past five years, Mr. Owen gave to Doctor Henderson, the medical examiner of the defendant, the name of G. S. Brown, but Doctor Henderson misunderstood Mr. Owen, and thought that Doctor Brown had only waited on him prior to five years from that date, and for that reason did not include the name of Doctor Brown in the list of physicians who had prescribed and consulted with Mr. Owen within five years prior to the date of the application, then the plaintiff can not be defeated from recovering hereon upon the ground that Mr. Owen failed to include the name of Doctor Brown in said application."

No contention is made by counsel for defendant that the court erred in giving this instruction. At the request of the defendant, the court gave the following instruction:

"By the terms of the application the deceased represented that he had last been attended by a physician in 1908 for malaria. If you find that he had been attended by a physician after the attendance referred to in said application, you are advised that this is a concealment vitiating the policy, and you will find for the defendant, unless it is shown that the attendance was for a slight malady not impairing the general health of the deceased." (No. 5.)

So it will be seen that the respective contentions of the parties on this point were fully submitted to the jury. In this connection it may also be stated that in instruc-

tion No. 5 the court committed an error in favor of the defendant. The defendant's claim being that the answers of the insured in the respect complained of were false representations, and that the insured had committed a fraud upon it, cast upon the defendant the burden of proving that fact. As a matter of law, the court could not presume it in the absence of all proof. *National Annuity Association* v. *McCall*, 103 Ark. 201; *Continental Casualty Co.* v. *Todd*, 82 Ark. 214; *Price* v. *Phoenix Mut. Life Ins. Co.*, 17 Minn. 497, and cases cited; *Herron* v. *The Peoria Marine & Fire Ins. Co.*, 28 Ill. 235.

It is insisted by counsel for defendant that this places too hard a rule upon the defendant for the reason that the testimony of the attending physician is not competent evidence to prove the false statement. In other words, they contend that it is almost impossible to prove that the applicant for insurance was afflicted with a serious malady, unless the insurance company could establish that fact in a suit on the policy by the evidence of the physician who attended the applicant. In answer to this it may be said that it is hardly probable that any person could become ill of a serious disease and conceal that fact from his family and his friends and acquaintances. The existence of the disease could be established by any of these persons, and the law will not presume that they would testify falsely in order that the beneficiaries of an insurance policy might recover judgment against an insurance company.

Again, it is contended by counsel for defendant that the court erred in admitting a certain letter written by A. C. Remmel to the wife of Owen after his death. The letter stated that the death of Owen was a great shock and surprise to Colonel Remmel and himself; that he was in the midst of health at the time he died, and directions were given in the letter as to how she should proceed in order to collect the insurance covered by the policy sued on. It will be remembered that A. C. Remmel was an employee in the office of Colonel Remmel, who was general agent for the insurance company in the State

of Arkansas. Both Colonel Remmel and A. C. Remmel were witnesses in the case. From their testimony it appears that Owen was a close personal and political friend and that they had frequent opportunities of seeing him, and were shocked when they heard of his death, because he appeared to be in good health at such times as they would meet him. Therefore, the statements made in the letter to which objection is made were proved by the testimony introduced by the defendant itself, and we can not see how the letter could in any way have prejudiced the rights of the insurance company.

Other assignments of error are pressed upon us to reverse the judgment in this case; but we do not deem it necessary to discuss them, because we think they are fully covered by the principles of law which we have already discussed and announced.

At the conclusion of the trial, under the act of 1905, at page 307, the court allowed the plaintiff's attorneys a fee of two thousand dollars. It will be remembered that the policy sued on was for ten thousand dollars. The plaintiff's attorneys stated to the court that they thought two thousand dollars was a reasonable fee, and the attorneys for defendant stated that in their judgment one thousand dollars was a reasonable fee. The action of the court in allowing attorney's fees in suits against fire insurance companies was construed in the case of *Merchants Fire Insurance Company* v. *McAdams,* 88 Ark. 550. The act also applies to suits against life insurance companies, and what was said by the court in the *McAdams* case, applies equally here. There the court said:

"In view, however, of another trial, we will call attention to an error of the court in fixing the amount of attorney's fee to be taxed against the insurance company based on evidence as to what would be a reasonable contingent fee. The statute provides that a reasonable attorney's fee for the prosecution of the suit and collection of the amount of the loss under the policy shall be taxed against the company. This means such a fee as would be reasonable for a litigant to pay his attorney for

prosecuting the case, and not a speculative or contingent fee based upon the uncertainty of the result of the litigation.''

In the instant case it may be said that the object of the statute was to allow plaintiff a reasonable sum for a competent attorney, or firm of attorneys, and the statute did not contemplate a fee for two attorneys, or two firms of attorneys. We think that, in view of the amount sued for in the present case, the sum of one thousand dollars would have been a reasonable fee to have paid the plaintiff's attorneys in this case, and the judgment of the circuit court in allowing the sum of two thousand dollars will be modified so as to reduce the amount allowed for the attorneys' fees to the sum of one thousand dollars.

From the views we have expressed, it necessarily follows that the judgment recovered by the plaintiff for the amount of the policy sued on will be affirmed; and the judgment for the attorneys' fees will be reduced to $1,000.