# TWEITH v. DULUTH, M. & I. R. RY. CO.

## Civil Action No. 625.

District Court, D. Minnesota,
Fifth Division.

June 19, 1946.

Irving H. Green, of Minneapolis, Minn., for plaintiff.

William O. Bissonett, of Duluth, Minn., for defendant.

BELL, District Judge.

This is a suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages for personal injuries resulting from negligence of the defendant. At the opening of the trial the defendant admitted liability and that there was no negligence on the part of the plaintiff. The verdict was for $28,000.

A motion for new trial has been presented. The defendant in support of the motion contends that the verdict was excessive and that the court erred in rejecting certain testimony offered by the defendant.

The plaintiff was forty-nine years of age, had been in good health, and was earning $154 per month. He had been a farmer the greater part of his life, had a seventh grade education, and was equipped to do labor only. He had been employed by the defendant for three years and seven months as a roundhouse laborer and at the time of the accident was engaged in the performance of his duties on the tender of a locomotive where, as directed by his foreman, he was holding a large heavy air hose which because of a defect made a sudden and violent jerk causing the plaintiff to fall to the ground a distance of twelve to fifteen feet.

The plaintiff promptly was taken to a hospital and was attended by a company doctor. It was found that he had sustained a compression fracture of the ninth dorsal and the first lumbar vertebrae, a fracture of the left eighth rib, a concussion of the brain, a cut on the top of the head seven inches in length, and trauma to the intervertebral disc of the spine and soft tissues surrounding the vertebrae. He was unconscious for twenty-three hours after the accident, was hospitalized for three weeks, and at the end of two weeks a full body cast was applied. He wore the cast for three months and was in a body brace at the time of the trial five months after the accident. Movement of the back and hip joints was limited. He testified to continuous headaches and severe pains.

The plaintiff was attended by the company doctor and two doctors called by him for consultation. Just before the trial he was examined by a doctor who testified in his behalf as a medical expert. The company doctor testified that the plaintiff had made a good recovery, and that in his opinion there would be no permanent disability, that the plaintiff could do light work in nine months after the accident and regular work in one year.

The medical expert for the plaintiff testified that the deformity of both vertebrae as shown by ex-ray films was permanent; that the plaintiff will always suffer pain especially if he undertakes to perform heavy labor; that he should not do any type of labor for a year from the time of the trial and that he may do some kinds of light work in the future but should not

undertake heavy labor because of the weakened condition of the spine and back; and that the plaintiff is permanently injured. That the plaintiff sustained serious injuries was undisputed and the only real issue in the case is the amount of damages that justly should be awarded.

■ Whether a verdict is excessive properly may be addressed to the discretion of the trial court on a motion for a new trial. Cole v. Chicago, St. Paul, M. & O. Ry. Co., D.C., 59 F.Supp. 443.

■ The amount of damages in an action for personal injuries is a question of fact for the determination of the jury and ordinarily courts will adhere to the well established rule that this function of the jury should not be invaded by the court. Fairmount Glass Works v. Cub Fork Coal Co. et al., 287 U.S. 474, 53 S.Ct. 252, 77 L. Ed. 439; Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520.

■ It is elementary that when the jury has returned a verdict, the evidence and all inferences that reasonably may be drawn therefrom must be viewed in the light most favorable to the decision of the jury. Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492.

■ There was no indication that the verdict in this case was the result of passion and prejudice. Nothing occurred during the trial to excite or arouse the jurors to such action. Sympathy may have been a factor as it is impossible for jurors to eliminate all feeling of sympathy for a severely injured person. It must be assumed that the jury considered the evidence pertinent to injury, permanency of injuries, the past earning capacity of the plaintiff, future earning capacity, and all the evidence bearing on the question of damages. Such consideration inevitably would lead to a verdict for a substantial sum. In my opinion the verdict is not so large as manifestly to indicate passion and prejudice justifying a new trial on the ground that it is excessive.

■ The question on the evidence next claims attention. Dr. McHaffie employed by the defendant attended the plaintiff on his arrival at the hospital and during the period of his convalescence. Irrespective of the source of employment, the doctor attended the patient in a professional capacity and the relation of physician and patient existed. United States Fidelity & Guaranty Company v. Hood, 124 Miss. 548, 87 So. 115, 15 A.L.R. 605; Battis v. Chicago Rock Island & Pacific Railway Company, 124 Iowa 623, 100 N.W. 543; Obermeyer v. Logeman Chair Manufacturing Company, 120 Mo.App. 59, 96 S.W. 673; Munz v. Salt Lake City Railroad Company, 25 Utah 220, 70 P. 852.

The information obtained by Dr. McHaffie in that capacity was privileged, if the patient desired to claim it, under Section 9814(4), Mason's Minnesota Statutes 1927, which provides:

"A licensed physician or surgeon shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereon which he acquired in attending the patient in a professional capacity and which was necessary to enable him to act in that capacity. * * * "

■ However, Dr. McHaffie was called by the plaintiff as an adverse witness under Section 9816, Mason's Minnesota Statutes 1927 and the privilege as to him thus waived, Maas et al. v. Laursen et al., 219 Minn. 461, 18 N.W.2d 233, 158 A.L.R. 215, so the question is not a ruling on the admissibility of the testimony of Dr. McHaffie. Seven weeks after the accident Dr. McHaffie and Dr. Dittrich called at plaintiff's home for an examination and consultation, and the testimony of the latter was offered by the defendant. An objection was interposed by the plaintiff on the ground of the privileged relation of physician and patient. The objection was sustained. The defendant contends that the plaintiff waived his right to object to the testimony of Dr. Dittrich by waiving as to Dr. McHaffie.

An examination of the witness pertaining to the relationship of physician and patient revealed that Dr. Dittrich examined the patient on February 5, 1946, at the request of Dr. McHaffie for the purpose of advising about treatments for him; that the doctors discussed the matter and that

Dr. Dittrich made some suggestions regarding the treatment and that he went there "Just like you would go to any patient that you were called to take care of".

Dr. McHaffie also called Dr. Haukom for consultation and to read ex-ray films while the plaintiff was at the hospital. The testimony of Dr. Haukom was not offered but no reason appears why its admissibility would not have been on a par with that of Dr. Dittrich. If these doctors were called for consultation and for advice in the treatment of the plaintiff, ordinarily they would not be permitted, over the objection of the patient, to divulge what they learned.

A similar situation was presented in the case of Leonczak v. Minneapolis, St. P. & S. S. M. Ry. Co., 161 Minn. 304, 201 N. W. 551, 552, in which the court said:

"The plaintiff went to the office of Dr. Dunne, a physician at Remer, for medical advice and treatment. Dr. Spinks was there.' The defendant offered to prove by Dr. Spinks the condition found on the examination made by Dr. Dunne. The evidence was rejected upon the objection of the plaintiff. Dr. Spinks testified that Dr. Dunne asked him to look at the plaintiff; that he asked him because he was a physician and surgeon; that he wanted his professional opinion; that the plaintiff did not object; that he participated in the physical examination with his consent; that the examination was in a professional capacity as a physician and surgeon; that Dr. Dunne asked him to act in such capacity; that what he learned from the examination was learned in order to enable him to act in that capacity; and that after the examination he gave his professional opinion to Dr. Dunne.

"Under our statute a physician or surgeon cannot, without the consent of his patient, disclose any information which he acquired 'in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity'. [Town of] G.S.1923, § 9814(4); G.S.1913, § 8375(4). The evidence was properly excluded. Green v. Nebagamain, 113 Wis. 508, 89 N.W. 520; Renihan v. Dennin, 103 N.Y. 573, 9 N.E. 320, 57 Am.Rep. 770; Mutual Life Ins. Co.

v. Owen, 111 Ark. 554, 164 S.W. 720; Smart v. Kansas City, 208 Mo. 162, 105 S.W. 709, 14 L.R.A.,N.S., 565, 123 Am.St.Rep. 415, 13 Ann.Cas. 932."

The defendant relies on Doll v. Scandrett et al., 201 Minn. 316, 276 N.W. 281, in which it was held that an examination and treatment of a patient by two or more physicians or surgeons was an unitary affair and that where the patient permits one of them, as his own witness, to testify as to the whole matter, privilege is waived.

In this case the examination and treatment of the two doctors cannot be said to be an "unitary affair". Moreover, the plaintiff did not call Dr. McHaffie as his witness but called him under the statute as an adverse witness and there was no objection by the defendant; consequently, Doll v. Scandrett does not apply.

Courts of many jurisdictions have held that the privilege under the statute is not waived by permitting one of two or more attending physicians to testify on the theory that the privilege extends to the individual witness and not to the consultation or transaction in which the physician was engaged. Jones v. City of Caldwell, 20 Idaho 5, 116 P. 110, 48 L.R.A.,N.S., 119; Brookhaven Lumber & Manufacturing Co. v. Adams, 132 Miss. 689, 97 So. 484; United States Fidelity & Guaranty Co. v. Hood, supra; Penn Mutual Life Insurance Co. v. Wiler, 100 Ind. 92, 50 Am.Rep. 769; Mellor v. Missouri Pacific Railway Co., 105 Mo. 455, 16 S.W. 849, 10 L.R.A. 36.

In Jones v. City of Caldwell, supra, the court said [20 Idaho 5, 116 P. 115]:

"We conclude that the decided weight of authority is in favor of the view that a waiver of the privilege as to one physician does not waive the privilege as to any other physician. It is also very clear that our statute forbids and prohibits the examination of a physician without the consent of the patient, and this privilege extends to the individual witness, and not to the consultation or transaction in which he was a physician. In other words, each individual physician is a witness within the meaning of this statute, rather than a number of physicians who may be present or partici-

pate in a consultation, being treated as one witness, * * *."

On principle the basis of the rule is sound. A patient may attend a clinic or hospital to consult an individual physician. While there, other physicians, for the best of reasons, may be called into consultation. Possibly the one called is at the time the duly appointed physician of some person having interests adverse to that of the patient. The physician called for consultation should refuse either to serve or to violate the privilege resulting from the relation of physician and patient. After the examination has been made the privilege should be respected. In United States Fidelity & Guaranty Co. v. Hood, supra, the court said [124 Miss. 548, 87 So. 119]:

"One of the reasons that may have prompted the Legislature in the enactment of the statute was the evil of commercializing knowledge so obtained by certain experts, so called, and by physicians employed by one party to wait upon and minister to parties which such employer had injured. But, whatever may have been the reason for the enactment of the statute, the statute expressly prohibits a physician from testifying without the consent of the patient."

■ The statute was enacted for the benefit of the patient and any change or correction should come from the legislature and not as a result of judicial legislation by the courts. A modification of the statute was made by the rule in Doll v. Scandrett a patient may expressly waive the privilege or may impliedly waive it by failing to object to the proffered testimony, but the rule should not be further extended.

■ Of course, if the defendant in a personal injury action desires evidence to show the physical condition of the plaintiff, Rule 35 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, furnishes a perfectly fair way to obtain it, so the defendant is not forced to resort to witnesses where the relation of physician and patient exists.

■ There is another very cogent reason why a new trial cannot be granted because of the exclusion of Dr. Dittrich's testimony. There was no offer of proof and what would have been his testimony is left to the realm of conjecture and cannot serve as a basis for setting aside the verdict of the jury and granting a new trial.

■ A new trial of this case could result only in a verdict for the plaintiff. It might be for a different sum but that does not justify setting aside the verdict of one jury to obtain that of another. The motion must be overruled.