## In re Will of Hunt.

*September 7—September 27, 1904.*

*Wills: Probate: Appeal from county court: Who is "person aggrieved": Legatee under earlier will: Evidence: Privileged communications: Physicians.*

1. On an appeal to the circuit court from an order admitting a will to probate, an alleged prior will, received in evidence and thus affording opportunity for comparison of signatures, etc., is, without other proof, foundation for a finding that such earlier document was signed by the testatrix and upon its face purported to be her will.
2. A person named as legatee in an earlier will which might be valid if a later one were rejected, is a "person aggrieved" by, and is entitled to appeal from, an order of the county court admitting the later will to probate.
3. All information needfully acquired by a physician in and for professional treatment of a patient is privileged, under sec. 4075, Stats. 1898; and such privilege, being created for the protection of the patient, is personal to him and can be waived by no one else.
4. In a contest over the probate of a will the attending physician of the testatrix cannot testify as to her mental competency, where his opinion on that subject is based entirely upon information derived from her statements or his own observation while treating her professionally and for the purpose of such treatment.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

The appeal is from a judgment of the circuit court affirming the order of the county court of Brown county, made without contest, admitting to probate the will of Susan Hunt, deceased, dated February 27, 1900; the appeal, both to the circuit court and to this court, being taken by *Anna Nadeau,* not an heir at law of the decedent, but merely a legatee under an alleged prior will dated December 29, 1885. Such prior will was introduced in evidence with an offer of proof of the authenticity of the signature thereto. Objection was made

that appellant could not show any interest to be aggrieved under a prior will until the same had been admitted to probate. The trial court overruled this objection, finding as a fact that the instrument of 1885 was signed by Susan Hunt, deceased, and purported to be her last will and testament as of its date. The trial court excluded testimony of the attending physician of Susan Hunt, deceased, as to her mental capacity, it being conceded that his opinion on that subject was based entirely upon information received by him either through his own observation or statements made by decedent to him while treating her as her physician, and for the purpose of treatment. The court found that the decedent, at the time of executing the 1900 will, was of sound, disposing mind and memory, and affirmed the probate of that will.

*J. C. Kerwin,* for the appellant, contended, *inter alia,* that the manifest intention of the legislature was to make the privilege afforded to physicians and patients co-extensive with and governed by the same construction as governs the privileged communications between attorneys and clients. *In re Downing's Will,* 118 Wis. 581; *Thompson v. Ish,* 99 Mo. 160. At common law in a will contest the lawyer of the deceased was allowed to testify as to the mental condition of the testator. *Russell v. Jackson,* 9 Hare, 387, cited with approval in 118 Wis. 592. The great weight of authority in this country has adopted the rule, in construing statutes similar to our own, that the legal adviser of the testator may testify as to the testamentary capacity of the deceased in a will contest, holding, as does *Russell v. Jackson,* that the reasons for the rule do not exist in this class of cases. *Scott v. Harris,* 113 Ill. 447; *Blackburn v. Crawfords,* 3 Wall. 186; *Thompson v. Ish,* 99 Mo. 160, 12 S. W. 510; *Doherty v. O'Callaghan,* 157 Mass. 90; *Worthington v. Klem,* 144 Mass. 167; *In re Layman's Will,* 40 Minn. 371, 42 N. W. 286; *In re Semper's Estate,* 82 Minn. 460, 85 N. W. 217; *Groll v. Tower,* 85 Mo. 249; *Winters v. Winters,* 102 Iowa, 53;

*Glover v. Patten,* 165 U. S. 394; *Wicks v. Dean,* 103 Ky.
69; Weeks, Attorneys (2d ed.) § 165*a;* 2 Taylor, Evidence,
§ 928, p. 603. The Indiana court held that the privilege is
a personal one, and after the death of the patient it can only
be waived by the devisee or personal representative of the de-
ceased. Michigan and California have adopted the same view,
while in New York this is especially provided by statute.
*In re Flint,* 100 Cal. 391, 34 Pac. 863; *Morris v. Morris,*
119 Ind. 341, 21 N. E. 918; *Fraser v. Jennison,* 42 Mich.
225. Many of the cases cited in this brief from other states
are referred to with approval in the *Downing Will Case,* 118
Wis. 581. This court in so far as it has ruled upon the sub-
ject favors the appellant's contention.

For the respondents *Rt. Rev. S. G. Messmer, St. Joseph's
Orphan Asylum of Green Bay* and *Monastery of Our Lady of
Charity* there was a brief by *Wigman, Martin & Martin;*
for the respondents *St. Patrick's Church Congregation, Rev.
M. J. O'Brien* and *Eleanor Van Heurk* there was a brief by
*Sheridan & Evans;* and the cause was argued orally by *P. H.
Martin.*

DODGE, J. 1. The respondents object to the maintenance
of this appeal, as they did to that in the circuit court, for the
reason that appellant has not shown herself to be aggrieved by
either the order or judgment appealed from, because she has
shown no interest; apparently contending, first, that her in-
terest as a legatee under a former will could only be estab-
lished by the probate of that will in county court in the man-
ner prescribed by sec. 3788, Stats. 1898; secondly, that, even
if the authenticity and validity of the will might have been
proved as a fact upon the trial in the .circuit court, no evi-
dence was given. As to the second objection, it must be noted
that the will itself was received in evidence, whereby the cir-
cuit court had opportunity to compare the decedent's signa-
tures upon that and upon the later will. We are therefore

unable to say that there was absolutely no evidence upon which he might have predicated his finding that the 1885 document was signed by her and that upon its face it purported to be her will. Further than this, however, the proof did not go.

The question, therefore, presented is whether a person named as legatee under another will, which might be valid if that under consideration were rejected, can be recognized as a party aggrieved to appeal from the probate without first having procured the allowance of the will under which she claims by the county court in due probate proceedings. The question as to a will is, of course, differentiated from a question of interest arising under any other paper by the fact that the circuit court cannot originally adjudicate upon the validity of such prior will, that authority being exclusively vested in the county court; hence, if full and complete proof of the due execution of the prior will were offered, and the circuit court thereon should conclude that it was a valid will, still that conclusion would not establish it as such, for it must thereafter be presented to the county court, and there may fail of probate and be a mere nullity. Sec. 2294, Stats. 1898. Upon the present showing, obviously the appellant in this case might defeat the will of 1900, and yet it transpire when she attempted to prove the will of 1885 that she was wholly without adverse interest, and the courts would have been put to labor and the distribution of the estate in accord with the wishes of every person interested therein might have been defeated. This consideration is weighty; but upon the other side it must be borne in mind that if the will of 1885 is authentic and valid, and that of 1900 is not, the appellant might practically be deprived of all opportunity to present her rights upon appeal. The admission of the will of 1885 to probate involves, of course, the revocation of the probate of the will of 1900. Only in connection with such a direct attack upon the latter will could she be heard to offer proof of the former.

Its invalidity at present is *res adjudicata* in the county court by virtue of the judgment already rendered therein. True, the county court has plenary power of an equitable character to re-examine and set aside its former decree, but also to refuse so to do; and if meanwhile that decree should be affirmed by the judgment of the circuit court, a most serious question is presented whether the power of the county court to set it aside would still exist, so that, unless it may be attacked on appeal, the present order and judgment may have finally adjudicated away appellant's rights.

The policy of our statutes is that one whose interests may by reasonable probability be affected by judgment of the county court shall have the right to demand a review upon appeal in the circuit and supreme courts. That right is to be favored; and, while it is by statute confined to a "person aggreived," those words must be interpreted liberally to protect the opportunity. May it not be said that one who is interested under an instrument if it be valid is aggrieved by a judgment which, by necessary implication, is conclusive upon its invalidity so as to preclude her from ever trying that question? The exact subject has perhaps never been decided in any jurisdiction where the power of originally adjudicating the validity of a will is so strictly limited to one court as in this state. But the reasons which justify recognition of such an appellant as an aggrieved party have received the sanction of some courts of high standing. *Buckingham's Appeal,* 57 Conn. 544, 18 Atl. 256; *Morey v. Sohier,* 63 N. H. 507, 3 Atl. 636; *McDonald v. McDonald,* 142 Ind. 55, 41 N. E. 336.

Upon due reflection we are convinced that in a predicament like this those reasons should control; although, if the objection to the later will were first offered in the county court, we should highly favor the practice which prevails in New York of refusing to listen to such a contestant until she had presented to that court for probate the will under which

she claimed, to the end that the court might effectually decide upon its validity and thus settle which document was to control the distribution of the estate before it. *Walsh v. Ryan,* 1 Bradf. Sur. 433, 434; *In re Chittenden's Will,* Tuck. 135. We conclude, therefore, that the objection to appellant's right to be heard upon the appeal in circuit court and in this court must be overruled. Of course, this conclusion as to sufficiency of interest merely to appeal from probate of the adverse will must not be understood to suggest that the earlier unprobated will could be relied on to establish any title or interest in property, or enable a legatee or devisee to maintain any action based on such title. That would be obnoxious to sec. 2294, Stats. 1898; *Pitts v. Melser,* 72 Ind. 469; *Wood v. Mathews,* 53 Ala. 1.

2. Exclusion of attending physician's testimony and opinion as to mental competency, based entirely upon information derived from decedent's statements or physician's observation while treating her professionally and for the purpose of such treatment:

Our decisions upon the statute (sec. 4075, Stats. 1898) giving privilege of secrecy to all information acquired by physician from patient in attending latter professionally, necessary to enable prescription for such patient, have eliminated from consideration very many of the refinements and distinctions with which some other courts have limited, if not emasculated, similar statutes. Thus the privilege under our statute is not confined to communications made by the patient, but extends to all information, however derived by the physician in the course of professional attendance and for the purpose specified. *McGowan v. Supreme Court I. O. F.* 104 Wis. 173, 186, 80 N. W. 603; *Green v. Nebagamain,* 113 Wis. 508, 512, 89 N. W. 520; *In re Downing's Will,* 118 Wis. 581, 590, 95 N. W. 876. Neither are the words "necessary" or "prescribe" to receive any technical or unduly restricted meaning. *In re Will of Bruendl,* 102 Wis. 45, 47,

78 N. W. 169. Further, and more important to the present controversy, we have held that the privilege is created for the protection of the patient, and is personal to him; and have in the plainest terms repudiated the doctrine supported by some authority elsewhere that others can in any degree waive the privilege. In *Boyle v. N. W. M. R. Asso.* 95 Wis. 312, 70 N. W. 351, this construction was announced, although its application was merely to deny right of waiver to physician. In *In re Will of Bruendl, supra,* right of waiver was contended for in behalf of the heirs of the decedent, who offered the physician's testimony, and the whole subject was argued and considered fully, whereupon it was said:

"The legislature has decided wisely that public policy requires such measure of restriction upon the freedom of the physician to testify or of *others to demand testimony.*" (Italics mine.)

While the decision in this case turned on other considerations, the above remark was made with deliberation and in response to full discussion. We adhere to that view, and hold that no one, save the patient himself, can effectively consent to withdrawal of this mantle of secrecy which the statute has cast about the information which the physician needfully acquires in and for professional treatment.

Appellant contends further, however, that the statute has no application to a contest over the probate of a will, and cites quite an array of cases where courts have, on one theory or another, reached substantially that conclusion. While most of these cases relate to the testimony of attorneys as to the very transaction of preparing the will, a few of them either deal directly with physicians or admit evidence of attorneys on grounds seemingly applicable to physicians. The great majority of these proceed on the ground that the right to waive the privilege, personal to the testator while living, passes on his death to those who succeed to his estate. This doctrine grew up in dealing with communications to attorneys with

reference to property, where, as said, the privilege was accorded as a protection merely to property interests; so that there was a measure of logic in the conclusion that those who succeed to the property rights succeeded also to the right of secrecy, and might waive it at least so far as it affected their own interests. This view has never yet been approved even as to attorneys in Wisconsin, where such evidence, whenever admitted, has been justified on other grounds, as we shall see. As to physicians, however, the attitude of this court, as already pointed out, is adverse to any power to waive the secrecy of professional information, and is also adverse to the grounds asserted by other courts, notably Iowa (*Winters v. Winters*, 102 Iowa, 53, 71 N. W. 184), viz., that the "statutes are for the protection of the patient while living *and of his estate when dead.*" Whether this last idea may be correct as to communications to attorneys with reference to property transactions, it certainly is not true with reference to the sheltering of information acquired by attending physician. The purpose of that statute is personal. It is to protect the patient himself from disgrace or chagrin. Its effect on property rights or estate is only incidental. *Boyle v. N. W. M. R. Asso.* 95 Wis. 322, 70 N. W. 351; *Green v. Nebagamain, supra; In re Will of Bruendl, supra.* Such reasons do not cease upon the death of the patient. His memory and good name are still subject to injury by publication of information necessary to proper treatment by his physician, and apprehension of such enforced publication after his death may well result in reluctance or unwillingness to make those disclosures necessary for preservation of life or health which it is the policy of the statute to encourage by assurance of their secrecy. One Wisconsin case (*Will of Jenkins,* 43 Wis. 610) is cited as sustaining admissibility of attending physician's testimony as to mental condition in a will case. In that case there was no question raised as to such admissibility if the physician's information were obtained in, and for the

purpose of, treatment. The court merely suggested that the physician's opinion might have been valuable on the question of mental competency, as, of course, it might if founded on observation in ordinary social intercourse, or other information not within the ban of the statute. *Fisher v. Fisher,* 129 N. Y. 654, 29 N. E. 951. There was no purpose in that case to decide that any information derived professionally by the physician would be admissible.

The authorities supporting admissibility of attorneys' testimony as to the transaction of preparing and executing a will, which do not rest upon a right of waiver of privilege in the legal representatives, do rest upon grounds wholly inapplicable to the physician's testimony excluded by the trial court. The real ground, albeit not very clearly declared in some of them, is that the very transaction itself evinced an intention and desire on the part of the testator that the attorney should disclose what transpired, and therefore he himself had waived the statutory and common-law seal of secrecy. The clearest cases are those where, at the testator's request, the attorney became a subscribing witness to his will. *In re Coleman's Will,* 111 N. Y. 220, 227, 19 N. E. 71; *McMaster v. Scriven,* 85 Wis. 162, 168, 55 N. W. 149. In such cases the thing done must be futile unless the acts and declarations constituting the execution and publication of the will be disclosed in testimony by the attorney; hence by clear implication the testator declares his wish that they be disclosed to the extent necessary. Other instances of implied waiver by the client are collected in *Koeber v. Somers,* 108 Wis. 497, 503, 84 N. W. 991, and *Herman v. Schlesinger,* 114 Wis. 382, 393, 90 N. W. 460. Obviously no such purpose can be ascribed to the disclosures made to a physician for purpose of treatment by him because at or about the same time the patient prepares and executes a will. There is no rational connection between the two things; no probability that the patient expects or wishes his physician to publish to the world acts perhaps in-

In re Will of Hunt, 122 Wis. 460.

dicating paretic or other conditions which might blacken the patient's good name and memory or threaten the peace of mind of his descendants. The distinction between both the statutes and the reasons governing exclusion of the testimony of attorneys and physicians, respectively, were exhaustively discussed in *Renihan v. Dennin,* 103 N. Y. 573, 579, 9 N. E. 320, and the inapplicability to the latter of many of the cases relating to the former declared. We approve the reasoning of that case in its application to the present situation.

The case *In re Downing's Will,* 118 Wis. 581, 95 N. W. 876, urged by appellant, turned on the fact that the attorney who testified did not act in a professional capacity, but merely as a scrivener, and therefore the communications made to him were not made "in the course of his professional employment." True, reference is made in the opinion, without express disapproval, to certain cases suggesting the doctrine of waiver by personal representatives and a lapse of the duty of secrecy after death of a testator; but there was no purpose to adopt such doctrine, for the facts as determined did not at all call for its application. That case, however, applied to an attorney's testimony, and expressly points out the obvious distinction between the privilege statutes relating respectively to physicians and attorneys and the much superior breadth and comprehensiveness of the former, and consequent inapplicability of decisions under the latter.

After considering all the arguments urged by appellant or suggested in authorities cited, we are constrained to adhere to the views heretofore maintained by this court that sec. 4075 is to be enforced according to its words, with no exception, save in the presence of a clear waiver of the privilege of secrecy by the patient himself; and that, after his ability to make such waiver is terminated by death, the physician's lips are forever sealed under all circumstances. Hence, that no error was committed by excluding the evidence in this case.

*By the Court.*—Judgment affirmed.