[Civil No. 2060.    Filed November 21, 1923.]

[220 Pac. 397.]

# HARRY L. SHORNICK, Appellant, v. ALMA A. SHORNICK, Appellee.

1. WITNESSES—DISQUALIFICATION OF WITNESS BECAUSE OF CONFIDEN-TIAL RELATIONSHIP MAY BE WAIVED.—Disqualification of a witness because of confidential relationship between husband and wife, attorney and client, priest and penitent or physician and patient, under Civil Code of 1913, paragraphs 1673–1678, is not absolute, but may be waived by such spouse, client, penitent or patient.

2. WITNESSES—PRIVILEGE AS TO COMMUNICATION TO PHYSICIAN MAY BE WAIVED BY PATIENT'S REPRESENTATIVES.—Disqualification of physician to testify without patient's consent as to communication by patient under Civil Code of 1913, paragraph 1677, subdivision 6, could be waived after patient's death by the patient's personal representative and heirs at law.

3. WITNESSES — SON'S TESTIMONY AS PHYSICIAN, AS TO FATHER'S MENTAL CAPACITY HELD ADMISSIBLE.—A son who, as a physician attended his father during the father's last illness, could testify as such physician as to the mental capacity of the father during his last illness, in action by the son as an heir at law to set aside deed executed at such time by the father, on the ground of mental incompetency, since the fact that the relationship of father and son, as well as patient and physician, existed between them, did not disqualify the son as a witness, but could be considered in weighing the testimony.

4. DEEDS — PROVISION MAKING DEED VOID IF RECORDED BEFORE GRANTOR'S DEATH HELD CONDITION SUBSEQUENT.—Provision that deed should "not be recorded until after the death of the grantor, and that if it is so recorded before death of the grantor, that fact nullifies the deed, and avoids the transfer," did not suspend or prevent the immediate investiture of title in the grantee, but was a condition subsequent, providing for divestiture of title, if grantee should violate condition and record deed before grantor's death.

---

2. Competency of attending physician to testify as to capacity of testator in a will contest, see notes in **Ann. Cas. 1912B, 1059; Ann. Cas. 1918A,** 1050; 32 **L. R. A. (N. S.)** 72; 48 **L. R. A. (N. S.)** 420.

4. Effect of delivery of deed to grantee, subject to a future extrinsic condition, see note in 16 **L. R. A. (N. S.)** 941.

5. EVIDENCE — PAROL EVIDENCE HELD NOT ADMISSIBLE TO PROVE GRANTOR'S INTENTION TO RETAIN TITLE UNTIL HIS DEATH. — Where grantor made an unconditional manual delivery to grantee of deed providing that it should not be recorded until after grantor's death, and that, if recorded theretofore, the deed should be void, parol evidence was not admissible to prove grantor's intention to retain title until his death, since such evidence would vary the terms of a written contract.

6. DEEDS—DELIVERY SUFFICIENT, NOTWITHSTANDING PROVISION AGAINST RECORDING UNTIL AFTER DEATH. — Grantor's manual delivery to grantee of deed, providing that it should not be recorded until after grantor's death, and, if so recorded, the deed should be void, *held* a sufficient delivery to vest title in grantee.

7. WILLS—CONVEYANCE WITH PROVISION AGAINST RECORDING DURING GRANTOR'S LIFE HELD A DEED.—Under Civil Code of 1913, paragraph 2055, providing that an estate of freehold · or inheritance may be made, to commence in the future by deed, as well as by will, a conveyance duly delivered, but containing a condition that it should not be recorded until after the grantor's death, was a deed.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Joseph S. Jenckes, Judge. Judgment reversed and cause remanded and a new trial granted.

Messrs. Silverthorn & Van Spanckeren and Mr. W. E. Ryan, for Appellant.

Messrs. Alexander & Christy and Mr. Hess Seaman, for Appellee.

ROSS, J.—This is a suit in equity, in which the appellant, Harry L. Schornick, the son and heir at law of George Schornick, deceased, seeks to have a deed of said George Schornick to Alma A. Schornick, his wife, of an eighty-acre tract of land (the separate property of deceased), in Maricopa county,

---

5. Rule that parol evidence is not admissible to vary, add to or alter a written contract, see note in 17 L. R. A. 270.

6. Provision against recording of instrument until after maker's death, see note in 11 A. L. R. 87.

See 18 C. J., pp. 211, 363; 22 C. J., p. 1121; 40 Cyc. 1085; 40 Cyc. 2387, 2397.

Arizona, set aside on the ground of mental incapacity of grantor, and undue influence exerted over the grantor by the grantee.

The plaintiff, who is a physician, attended his father in his last illness, and while a witness in his own behalf was questioned as to his father's mental capacity at the time of the execution of the deed. This testimony, upon objection, was excluded as privileged. It was particularly sought to show by this witness "what narcotics were administered to the patient," and that their effect upon the disease from which George Schornick was suffering was to render him mentally incompetent. After all of the testimony was in, upon the motion of defendant, the jury was discharged, and judgment by the court dismissing plaintiff's complaint was entered.

The ruling of the court rejecting the offer of plaintiff's testimony on the ground of its privileged character is the principal assignment on appeal. It presents a very interesting as well as important question; it has not been presented to the courts of this state before, and we are at liberty to adopt the rule that seems to us most reasonable and best suited to attain justice in cases of this kind.

The particular statute invoked by defendant, while differing somewhat in phraseology from the statutes of other states on the subject of privileged communications, is substantially the same in meaning and effect. It is as follows:

"A physician or surgeon cannot be examined, without the consent of his patient, as to any communication made by his patient with reference to any physical or supposed physical disease or any knowledge obtained by personal examination of such patient; provided, that if a person offer himself as a witness and voluntarily testify with reference to such communications, that is to be deemed a consent to the examination of such physician or attorney." Subdivision 6, par. 1677, Civ. Code of 1913.

It will be noted that the patient is expressly authorized to waive the protection of the statute, but the statute is silent as to the right or power of anyone else to waive such privilege for the patient, either during his lifetime or after his death. But it would seem that, if the patient might in his lifetime personally waive the claim of secrecy, he could do so by his agent or attorney. When he dies and can no longer act for himself, or appoint others to act for him, the law steps in and names those who may act in his stead, by reason of the interest they have as his heirs at law or by appointment as his personal representative. Just how far these latter may represent the deceased patient in the matter of waiving the statutory protection, or whether they may waive it at all, has been the rock upon which the courts have divided. If the right to waive the privilege dies with the patient, then whatever he may have communicated to his physician, or whatever the physician may have learned by observation or examination, although its disclosure would save his estate or preserve his good name, is doomed to eternal oblivion.

Committed to the rule that the privilege can be waived by the patient only, and that in his lifetime, are the courts of California, Wisconsin and North Dakota. *In re Flint's Estate,* 100 Cal. 391, 34 Pac. 863; *In re Nelson's Estate,* 132 Cal. 182, 64 Pac. 294; *In re Hunt,* 122 Wis. 460, 100 N. W. 874; *Auld* v. *Cathro,* 20 N. D. 461, Ann. Cas. 1913A, 90, 32 L. R. A. (N. S.) 71, 128 N. W. 1025. This was formerly the rule in New York (*In re Myer,* 184 N. Y. 54, 6 Ann. Cas. 26, 76 N. E. 920), but in 1893 it was changed by statute, by the terms of which the executor, the surviving husband or widow, or any heir at law or next of kin, was authorized to waive the privilege, except confidential communications and facts tending to disgrace the memory of the deceased patient. *Twaddell*

v. *Weidler*, 109 App. Div. 444, 96 N. Y. Supp. 90,
affirmed 186 N. Y. 601, 79 N. E. 1117; *Roche* v. *Nason*,
185 N. Y. 128, 77 N. E. 1007. See note to *In re Gray*,
Ann. Cas. 1912B, 1042. This rule was originally
adopted by the courts of Utah (*In re Estate of Van
Alstine*, 26 Utah, 193, 72 Pac. 942), but in the recent
case of *Grieve* v. *Howard*, 54 Utah, 225, 180 Pac.
423, that court in a very able and well-reasoned opin-
ion repudiated the doctrine announced in the Van
Alstine case, and held that the privilege or protec-
tion of the statute could be waived by the personal
representative of the deceased patient.

Under our statutes (paragraphs 1673-1678, inclu-
sive, Civ. Code 1913) there are only two classes of
witnesses incompetent to testify: (1) Those of un-
sound minds; and (2) children under ten years of
age who appear incapable of receiving just impres-
sions of the facts respecting which they are exam-
ined or of relating them truly. All other persons are
competent to testify, and may do so if not disquali-
fied by reason of the existence of some confidential
relationship, such as husband and wife, attorney and
client, priest and penitent, or physician and patient.
The disqualification is not absolute even where these
confidential relations exist, as under the statute one
spouse may testify for or against the other upon the
latter's consent, and so may the attorney, priest or
physician upon the consent of the client, penitent
or patient. The cloak of secrecy may be removed
by the consent of the party for whose protection it
was intended. The rule of the common law that
disqualified a party to litigation, or one interested
therein, or an infidel, or one indicted, accused or
convicted of crime from being a witness, has been
abolished. So the legislative policy is to remove
every obstacle in the way of ascertaining the truth,
and what was formerly thought a disqualification
to testify goes now only to the weight of the wit-

ness' testimony. In the confidential relations mentioned the spouse, client, penitent and patient are the custodians of the secrets, and not those whose professional counsel or aid was had. The law has not unalterably sealed the lips of anyone capable of receiving just impressions of facts and of relating them truly.

What was said of the statute of another state may well be said of ours:

"The statute quoted contemplates that the patient may consent to this physician's testifying. Therefore no question of public policy is involved. The public policy of the state does not depend upon the will of individuals who are free to act as circumstances may suggest them. It is elementary law that communications, made in professional confidence, are not incompetent. If a third person hear them he may testify. The disqualification is imposed upon the lawyer, physician or priest only, and not for his benefit, or for the benefit of the public, but merely as a privilege to the client, patient or person confessing. This privilege, like many others, even those protected by constitutional guaranty, may be waived. By statute, if the party himself testify, the privilege is waived. If he publish the confidential matter to the world the privilege is waived." *Insurance Co.* v. *Brubaker,* 78 Kan. 146, 155, 16 Ann. Cas. 267, 130 Am. St. Rep. 356, 18 L. R. A. (N. S.) 362, 96 Pac. 62, 65.

One of the earliest announcements by an American court of the doctrine that these privileged statutes could be waived by others than the patient was made by that wise jurist and author, Mr. Justice COOLEY, in *Fraser* v. *Jennison,* 42 Mich. 206, 224, 3 N. W. 882, 895, as follows:

"This statute, as we have held, covers information acquired by observation while the physician is in attendance upon his patient, as well as communications made by the patient to him (*Briggs* v. *Briggs,* 20 Mich. 341); but the rule it establishes is one of privilege for the protection of the patient; and he

may waive it if he sees fit (*Scripps* v. *Foster,* 41 Mich. 742) ; and what he may do in his lifetime, those who represent him after his death may also do for the protection of the interests they claim under him.''

Since the protection of the statute is not absolute but may be waived by the patient, it cannot be said to be a rule of evidence founded in public policy. The lawmaker has seen no harm or injury to the public or public good in leaving it optional with the patient as to whether his physician should be permitted to testify as to what he has learned professionally, and consequently has confided to the patient entire freedom to waive the privilege if he sees fit. The privilege, then, is one concerning, first, the patient in his lifetime, and second, his good name and estate after his death, and if the rule be limited to waivers for the protection of his memory and estate, we can see no good reason why it may not be exercised by the personal representative and the heirs at law—the one as well as the other. It may be taken for granted that the patient will not waive the privilege when the testimony of his physician would be damaging to his property interests or when it has a tendency to disgrace and humiliate him or expose him to public hatred and shame. And likewise it may be assumed the heirs at law and personal representatives would, for personal, if no other, reason be actuated by the same motives.

We think the considerations in favor of allowing the personal representative to waive the privilege are about as well stated in *Olson* v. *Court of Honor,* 100 Minn. 117, 117 Am. St. Rep. 676, 10 Ann. Cas. 622, 8 L. R. A. (N. S.) 521, 110 N. W. 374, as they could be. It was a case by the husband and children to collect an insurance policy on the life of the wife and mother. The question raised by the defendant was the violation by the deceased of the condition of the policy exempting it from liability if the insured

committed suicide while not under treatment for insanity. When her physician was offered to prove that she was under treatment at the time of her death, the defendant objected on the ground that it was privileged. The court said:

"If this objection was well taken, the evidence was not competent. It is manifest that the purpose of the statute is to protect the patient, and not his adversary; for the evidence may be received with the consent of the patient. Does this privilege become absolute on the death of the patient, or may those who represent him or claim an interest under him after death waive the privilege for the protection of such interest? This is an important question; for, if they cannot waive the privilege given by the statute, and their adversary may invoke it to suppress the truth and defeat the enforcement of rights the deceased provided for them in his lifetime, then the statute may be made an instrument for cheating justice. If such be the proper construction of the statute, then, if an executor or legatee presents a will for probate, which is contested on the ground that the testator was of unsound mind when the will was made, the executor or legatee may not, if the contestant objects, call the physician who was attending the testator at the time to testify as to his knowledge of the patient's mental condition, acquired in attending him. Nor could the personal representatives of a party, in an action to recover damages on account of the death of his intestate by the alleged negligence of the defendant, call the physician who attended the intestate after his injury to testify as to the nature of the injuries and the cause of death, if such information was acquired in attending him."

It seems to us the reasons justifying a waiver by the personal representative justify a waiver by the heirs at law, especially where the property involved is real estate, the title to which instantly vests in heirs upon the death of the ancestor, subject only to administration and payment of debts. *In re Le Prohon,* 102 Me. 455, 10 Ann. Cas. 1115, 67 Atl. 317,

the contest was between the legatee and the heirs of the deceased. The latter were permitted to prove by the attorney of deceased what she had said about destroying her will, over objections of legatee, on the grounds of its privileged character. On the ruling permitting the question the court said:

"It is a universal rule that the question of privilege, with respect to the communications offered in evidence, can be invoked only by the author of the communication. It is a personal privilege. The general principle upon which the right of privileged communication rests is too well established to require reiteration. But in the case of persons deceased it is held that the right of waiver, when the character and reputation of the deceased are not involved, is lodged in the personal representative; that is, the executor or administrator of the estate, or the heirs of the deceased; and the ground upon which they are permitted to exercise the right of waiver is based upon the fact that they are all interested in the protection of the estate and upon the presumption that they would consent to the waiver of the privileged communication only for the purpose of securing that end. This rule is general. Only two or three states in the Union have adopted the other rule that a privileged communication cannot be waived by the personal representative or the heirs of the deceased person."

Wigmore, in his splendid work on Evidence, in section 2391, says:

"It is incongruous to hold that the person who manages the litigation of the deceased's property interests has no power to waive rules of evidence for the purpose of advancing those interests. The power of an heir may also be conceded, if we remember that the heir, first, is at least equally interested in preserving the ancestor's reputation, and secondly, has an equal moral claim to protect the deceased's property rights from unwarranted diminution. Except in two or three jurisdictions, it is usually agreed that the deceased's representative (and probably also the heir) may waive privilege."

In *Bruington* v. *Wagoner,* 100 Kan. 10 and 439, 164 Pac. 1057, it was said:

" . . . It has been held in this state that not only may the patient himself waive this privilege (*Armstrong* v. *Street Ry. Co.,* 93 Kan. 493, 144 Pac. 847), but, after the patient's death, the privilege may be waived by his heirs at law (*Fish* v. *Poorman,* 85 Kan. 237, syl. par. 6, 116 Pac. 898). This is in accord with the best judicial thought in this country on this subject and takes nothing from the effect of defendants' citations. *Winters* v. *Winters,* 102 Iowa, 53, 63 Am. St. Rep. 428, and note, 71 N. W. 184; *Thompson* v. *Ish,* 99 Mo. 160, 17 Am. St. Rep. 552, 12 S. W. 510; note in 32 L. R. A. 73; 40 Cyc. 2397; 4 Wigmore on Evidence, §§ 2388, 2391."

Under the Arizona statute of descent both plaintiff and defendant are heirs at law of the deceased, and the property in question being the separate property of deceased, in the absence of any other disposition, would have developed two-thirds, in fee simple, upon the plaintiff, and a life estate in one-third to defendant, with the remainder over to plaintiff. Paragraph 1092, Civ. Code. They are not both before the court claiming as heirs. The defendant claims as grantee, and her testimonial rights should be tested by the same rules as if she were not an heir but a stranger. If she can invoke the privilege and prevent the attending physician from testifying, any grantee from the ancestor can do the same. Besides, the testimony sought from the physician is not objectionable as tending to blacken the memory of the deceased nor lessen his estate.

The Bruington case, *supra,* was between two sets of heirs of deceased equally removed, one set being the children of a brother and the other the children of a sister. One claimed as grantees of the realty and assignees of the personalty, and the other as the heirs. The action was by the heirs to cancel the deed and assignment, and the question was as to the mental

capacity of the ancestor, upon which the attending physician was permitted to testify. The court said:

"Here the plaintiffs were the heirs at law of the deceased, and they were within their rights when they waived this statutory privilege. . . . It should not be forgotten, either that defendants were in court merely in their capacity as defendant grantees of deeds and assignments whose validity was being challenged by the heirs at law."

In the very recent case of *Craig* v. *Craig,* 112 Kan. 472, 482, 212 Pac. 72, 77, on the same subject, the court had this to say:

"The objection to the testimony of the physician is one that may be waived by the heirs in a contest with strangers to the estate. *Fish* v. *Poorman,* 85 Kan. 237, 116 Pac. 898; *Bruington* v. *Wagoner,* 100 Kan. 10, 164 Pac. 1057. Even in a case between heirs at law, where some consent, and others object to waiving the privilege, it has been intimated that in such a situation this court would probably hold 'against any interpretation of rules of evidence which limits judicial inquiry in the ascertainment of truth.'"

*In re Gray,* 88 Neb. 835, Ann. Cas. 1912B, 1037, 33 L. R. A. (N. S.) 319, 130 N. W. 746, the second paragraph of the syllabus is as follows:

"In a contest over the probate of a will, between the person therein named as an executor or a legatee and the heirs at law of decedent, a statute forbidding the disclosure of privileged communications (Code Neb., § 333) does not prevent a physician from testifying on behalf of either side of the controversy to the mental condition of testatrix, though the information which enables him to do so was acquired solely in his professional capacity, while attending her during her last illness."

We have come to the conclusion the court erred in not permitting plaintiff to testify as to the mental capacity of his father during his last illness and at the time of the execution of the deed in question.

The fact that the relationship of father and son, as well as patient and physician, existed between the deceased and witness did not disqualify the witness, but is or may be a proper matter for consideration in weighing the latter's testimony.

It is next contended that there was no delivery of the deed sufficient to pass the title; that it was not intended by the grantor to take effect immediately, but it was intended as a testamentary disposition. This contention is based upon the following condition in the body of the deed, to wit:

"It is distinctly understood that this deed shall not be recorded until after the death of the grantor, and that if it is so recorded before the death of the grantor that act nullifies the deed, and voids the transfer of said above land,"

—and the testimony of the draftsman of the deed as to the reasons the grantor gave for having such condition inserted. The draftsman testified the deceased prepared the condition and handed it to him, and asked him what effect it would have in a deed; that he told deceased that while he was not a lawyer he thought deceased had a right to insert in a deed any condition that he desired, whereupon deceased instructed him to put it in the deed, stating, in answer to a question, that he didn't know that it was important but he preferred it in deed, adding:

"I am a sick man and may die, and I may get well, but should I die I want Alma to have that property, but, if I live, I naturally would want to—expect to control my property as long as I live."

The defendant, grantee in deed, and her testimony is not contradicted, testified her husband handed her the deed, saying:

"Here, Alma, is a deed to the ranch. I give you the ranch. You take this, and take care of it. This will protect you and if anything happens to me you send that to Phoenix by registered mail for recording."

Defendant kept the deed in her possession until after the death of the grantor, when she caused it to be recorded.

Looking first to the condition of the deed, we think it clear therefrom that it is a condition subsequent; that it was not intended thereby to suspend or prevent the immediate investiture of title in the grantee, but to divest her of her title should she violate the terms of the condition and record deed before the grantor's death.

"The fee passes by a deed upon a condition subsequent in the same manner and to the same extent as if the condition did not exist, subject to the contingency of being defeated as provided in the condition." Paragraph 959, 2 Devlin on Real Estate, 3d ed.

It will be noted the manual delivery of the deed to grantee was actual and unconditional; there is no suggestion that it should ever be returned or destroyed in case grantor should be restored to health. Whatever deceased may have meant by his oral statement to the scrivener, to the effect that he wanted to retain control of his property as long as he lived, he did not choose to put this desire in the deed, and later, upon the delivery of deed to grantee, he made no such condition. If the language employed in the deed was doubtful, or if the act of delivery was equivocal, what was said to the scrivener might be of use in determining the grantor's intention; but to take what deceased said to scrivener in oral conversation as conveying an intention by grantor to retain title to premises, notwithstanding the plain and unmistakable import of the language of the deed, would violate the well-established rule forbidding the use of parol evidence to vary the terms of a written contract.

In *Pass* v. *Stephens*, 22 Ariz. 461, 198 Pac. 712, we said:

"It is only when the terms of the writing are not clear that collateral evidence may be received to ascertain its intent. *In re Longer,* 108 Iowa, 34, 75 Am. St. Rep. 206, 78 N. W. 834. Otherwise the intent will be gathered from the instrument itself."

Even if it were possible to determine from the language of the instrument in question, and the oral evidence, and the act of delivery, that it was the intention of the deceased that it should not take effect until after his death, still it would be good as a deed or conveyance under paragraph 2055, Civil Code of 1913, which reads as follows:

"An estate of freehold or inheritance may be made, to commence in future, by deed or conveyance, in like manner as by will."

This statute was lifted bodily from Texas (article 1111, Vernon's Sayles' Texas Civ. Stats. 1914). The courts of the latter state, under this statute, have construed to be deeds of conveyance: An instrument containing a covenant that grantor should retain possession during his lifetime: *Carpenter* v. *Hannig* (Tex. Civ. App.), 34 S. W. 774; *Matthews* v. *Moses,* 21 Tex. Civ. App. 494, 52 S. W. 113; an instrument reciting "this deed is to take effect at my death, and not before": *McLain* v. *Garrison,* 39 Tex. Civ. App. 433, 431, 88 S. W. 485, 89 S. W. 284. See, also, *Wright* v. *Giles,* 60 Tex. Civ. App. 550, 129 S. W. 1163; *Belgrade* v. *Carter* (Tex. Civ. App.), 146 S. W. 964; *Low* v. *Low* (Tex. Civ. App.), 172 S. W. 590.

We think the court ruled correctly that the instrument in question is a deed, and that the delivery was complete. The judgment, however, must be reversed and the cause remanded, and a new trial granted on account of the refusal of the court to permit the plaintiff to testify. It is so ordered.

McALISTER, C. J., and LYMAN, J., concur.