COURT OF APPEALS
DECISION
DATED AND FILED

May 12, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2018AP2023**

Cir. Ct. No.  2017CV505

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

---

LARRY A. WENDTLAND AND JANICE L. WENDTLAND,

　　PLAINTIFFS-RESPONDENTS,

　V.

DAVID J. FRAHM, SR. AND CONSTANCE J. FRAHM,

　　DEFENDANTS-APPELLANTS,

DAVID JOSEPH FRAHM, SR. & CONSTANCE JANE FRAHM REVOCABLE TRUST, ROGER ROSS AND RICHARD ROSS,

　　DEFENDANTS.

---

　　　　　APPEAL from a judgment of the circuit court for Marathon County: MICHAEL MORAN, Judge. *Affirmed.*

　　　　　Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   David J. Frahm, Sr., and Constance J. Frahm (the Frahms) appeal from a judgment determining the location and width of a right-of-way easement.   The Frahms also appeal from an award of double costs stemming from their refusal of a statutory offer of settlement.   We affirm.

## BACKGROUND

¶2     In 1958, a perpetual easement was recorded granting a right of way "across" forty acres in the town of Rib Falls.   Larry and Janice Wendtland purchased the original forty acres (the servient land) in 1991—but in 2006 they sold the south 10.57 acres to adjacent farmers Roger and Richard Ross.   The David Joseph Frahm, Sr. and Constance Jane Frahm Revocable Trust (the Trust) purchased the adjacent land east of the forty acres (the Frahm Trust property), which benefitted from the easement.   The Frahms are trustees of the Trust.   The Frahm Trust property was previously owned by Tigerton Lumber Company, which utilized the right-of-way easement to transport logs across the forty acres to an adjacent highway to the west side of the forty acres.

¶3     A dispute arose when the Wendtlands were unable to complete the sale of their property to a third party who intended to construct a home on their servient land.   The Wendtlands commenced the present lawsuit alleging that the Frahms claimed the right-of-way easement "covers every square inch of the Original 40 Acres."   The Wendtlands sought a declaration of interest in property,

pursuant to WIS. STAT. ch. 841 (2017-18),[1] to establish the location and width of the easement.  The complaint alleged the northern two-thirds of the servient forty acres had a significant wetland rendering a right of way impossible, meaning the right of way had to be south of the wetland.  The complaint also alleged the only use of the right of way during the Wendtlands' ownership of the property "has been near the south boundary line … where the Right-Of-Way Easement properly was established and exists."  The Wendtlands sought a declaration that the right-of-way easement "is the south 1 ½ rods wide of [the original 40 acres,] extending from [the highway] to [the Frahm Trust property]."

¶4  The Frahms and the Trust moved for summary judgment, arguing the easement was unambiguous, and it provided them with unlimited access throughout the entire servient forty acres.  The circuit court denied the motion in a written decision.  The court stated:

> This court finds the easement is ambiguous and vague.  The language really doesn't give a clear description of the easement.  The words right-of-way across [are] overly broad in this fact situation and is not clear in regard to the description according to my review of the document.
>
>  ….
>
> [T]he easement as written makes essentially the entire 40 acre parcel servient rendering it unusable … or able to be developed in any way ….

¶5  The circuit court subsequently conducted a bench trial and heard evidence to determine the location and width of the right-of-way easement.  The

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Wendtlands testified that the "south 40 line" was the highest land in the original forty acres; that it would be the best and easiest place to put an easement road for access from the highway straight to the Frahm Trust property; and that the southern boundary had been used in the past for logging. Roger Ross testified at trial in the Wendtlands' case-in-chief, and he agreed with the Wendtlands that the location of the easement should follow the south boundary of the forty acres:

> Q: And you've heard the Wendtlands testify. Would you agree that within this 40 acres, the highest ground and best possible ground for an easement would be along the south 40 line of that 40 acres?
>
> A: Yes, that's most logical.
>
> Q: No wetland there?
>
> A: No.
>
> Q: No creek?
>
> A: No.
>
> Q: Good, high, firm ground?
>
> A: Yes.
>
> Q: Easy to put a road in there?
>
> A: Yes.[2]

¶6 Following the trial, the circuit court issued an oral decision. The court stated:

> I have to look at it from a perspective of what is fair to everyone? That's what equity means. What's fair, and this Court has those equitable powers to do that, and what is

---

[2] Roger Ross further testified that during the period of his ownership of land within the original forty acres, he had never witnessed the Frahms or any members of the public cross any area of the property to gain access to the Frahm Trust property.

reasonable and suitable and convenient to all parties. That's really what we're looking at here, and that's what the law calls us to do.

....

I want to make sure that Mr. Frahm has the ability to use his property as he sees and have access to it. I mean, that's really what we're here to do. I want him to have full access to his property and be able to use it in any way he wishes to do so, and that would, in my understanding, be hunting, recreation. It would also be logging. … I want it to be convenient and reasonable for him to do that.

At the same time, I want it to be reasonable and convenient for the Wendtlands if they wish to sell this property and to have their – what I would say enjoyment of the use of their property and not be unreasonably interfered with ….

So I have to weigh those different things ….

¶7      The circuit court determined the right-of-way easement would be two rods wide and follow the southern edge of the forty acres from the highway to the Frahm Trust property.[3]  The court reasoned:

I think that gives everybody the absolute best ingress and egress to the property. In fact, whatever has been logged before, it's always been logged down through that corner, and right out even south of there through the use of a road ….

If we're going to log this property and we're going to run logs across what I would say are two-thirds wetlands to get up to a dry area in the corner, I can't see a logging company even considering that as something they would do. … It makes no sense to me.

¶8      The circuit court also found that an easement across the southern border of the original forty acres would not decrease the value of the forty acres.

---

[3]  Two rods is thirty-three feet.

Rather, the court stated "it probably enhances the value of the property because there would be a nice road that is going to be 2 rods wide."

¶9      Following the circuit court's decision on the location and width of the easement, a dispute arose over the bill of costs. Prior to trial, the Wendtlands had served a written statutory offer of settlement upon the Frahms, individually, and upon the Trust, offering to locate an easement two rods and one-inch wide along the southern boundary of the original forty acres. Following the court's ruling on the easement, the Wendtlands sought a double costs award because the Wendtlands' trial result was more favorable than the statutory offer. A hearing was held following an objection to costs, and the court determined that double costs were proper against the Frahms and the Trust. The Frahms now appeal.

## DISCUSSION

¶10      Whether a deed establishing an easement is ambiguous is a question of law we decide independently. *Eckendorf v. Austin*, 2000 WI App 219, ¶7, 239 Wis. 2d 69, 619 N.W.2d 129. A circuit court has equitable powers to determine the location and width of an easement. *See Atkinson v. Mentzel*, 211 Wis. 2d 628, 641, 566 N.W.2d 158 (1997). If the location is not expressly defined, the right of easement cannot be exercised over the whole of the land. *Id.* Rather, a reasonably convenient and suitable way is presumed to have been intended. In that regard, a circuit court may look to extrinsic evidence, "and the practical construction given to it by the acts of the parties is of great force in determining its construction." *See Berg v. Ziel*, 2015 WI App 72, ¶¶13-14, 365 Wis. 2d 131, 870 N.W.2d 666 (citation omitted). The test is whether the owner of the dominant estate can reasonably use the servient property as intended. *Atkinson*, 211 Wis. 2d at 645-46. Stated differently, the easement must be interpreted so as to accomplish its

6

purpose while bearing in mind the reasonable convenience of both parties. *Id.* at 646. An equitable determination will not be disturbed unless it is contrary to the great weight and clear preponderance of the evidence. *In re Acme Brass & Metal Works*, 225 Wis. 74, 78, 272 N.W. 356 (1937).

¶11 The Frahms argue "[t]he description of the easement encompasses the entire subservient [sic] estate and is not ambiguous." We need not reach the merits of this issue, however, because a party cannot appeal from a judgment or order unless they are aggrieved by it. *See La Crosse Trust Co. v. Bluske*, 99 Wis. 2d 427, 428, 299 N.W.2d 302 (Ct. App. 1980). The Frahms, individually, did not own the property benefitted by the right-of-way easement. It is undisputed that the Trust owned the dominant estate benefitted by the easement, and the Trust did not appeal the circuit court's judgment, even though it was a party below. The notice of appeal confirms that only "David J. Frahm and Constance J. Frahm" appealed from the judgment. The Frahms, individually, were not aggrieved by the court's determination of the location and width of the right-of-way easement. Because the Trust did not appeal, no aggrieved party appealed from the court's determination regarding the right-of-way easement.

¶12 The Frahms contend that "as both the beneficiaries and the trustees of [the Frahm Trust], the Frahms are personally impacted and aggrieved by any detrimental or adverse effect on the [T]rust." In this regard, the Frahms cite generally to *In re Hunt's Will*, 122 Wis. 460, 462-63, 100 N.W. 874 (1904). That case involved a person named as a legatee under an earlier will, which "might be valid if that [will] under consideration were rejected." *Id.* at 463. In the present case, there is nothing in the record on appeal establishing that the Frahms are either "beneficiaries" or legatees. *In re Hunt's Will* is thus inapplicable.

¶13     The Frahms also cite generally to ***McKenney v. Minahan***, 119 Wis. 651, 97 N.W. 489 (1903).  The Frahms argue that "as trustees and as proper representatives of the [T]rust that is adversely impacted by the decision, both of the Frahms are considered an 'aggrieved party.'"  In ***McKenney***, the court stated:

> It was the duty of the administrator to preserve the property of the estate, so far as he legally could, for transmission to the heirs of the deceased.  In the settlement of claims against the estate he stood for them.  Any injury to their interests, in legal effect, was a grievance to him within the meaning of the appeal statute.

***Id.*** at 654.

¶14     The Frahms have not developed any argument explaining what interests the Frahms represented, individually, that were equivalent to the relationship between an administrator of an estate and its beneficiaries.  Nor have the Frahms explained how—or to what extent—they are "proper representatives of the [T]rust."  The Frahms similarly fail to explain what interests they represented in the circuit court that would differ from the interests represented by the Trust itself.  Here, the Trust itself was named and appeared as a party in the circuit court proceedings—and the Trust, as the easement's owner, was the party that was aggrieved by the court's determination of the location and width of the right-of-way easement.  Accordingly, the Trust was, and remains, the aggrieved party regarding the location and width of the easement, but it was apparently satisfied with that decision and did not choose to appeal.

¶15     The Frahms thus do not provide citation to any legal authority on point.  Absent any applicable legal authority cited by the Frahms, we have no basis to alter our conclusion that the Frahms, individually, were not aggrieved by the circuit court's determination of the location and width of the right-of-way

8

easement. Because the Trust did not appeal, there is no aggrieved party that appealed from the circuit court judgment.

¶16 We turn now to the issue of double costs. We reach the merits of the Frahms' appeal from the double costs issue because on that issue, the Frahms, individually, have standing irrespective of the Trust.[4] That standing exists because double costs were assessed against the Frahms, individually, as well as against the Trust. Accordingly, as to the issue of double costs, the Frahms are aggrieved parties.

¶17 On the merits of the double costs issue, the Frahms raise several issues. The Frahms contend double costs were improper because the circuit court's determination of the location and width of the right-of-way easement was not more favorable to the Wendtlands than their offer of settlement. The Frahms contend that the language of WIS. STAT. § 807.01(3) allows an offer of settlement to seek three categories of relief: "a plaintiff's offer may demand payment of a sum of money, the transfer of property, or other specified relief sought in the action." According to the Frahms: "Historically, courts compare the monetary amounts to determine whether a result is more favorable or not, however the judgment in this case does not involve a monetary amount." This argument is meritless.

¶18 WISCONSIN STAT. § 807.01(3) provides: "If the offer of settlement is not accepted and the plaintiff *recovers a more favorable judgment*, the plaintiff

---

[4] Again, because the Trust did not appeal, we do not address the Trust's liability for double costs; we only address the issue of liability for double costs in regard to the Frahms, individually.

shall recover double the amount of the taxable costs." (Emphasis added.) The Wendtlands' offer of settlement was to locate an easement two rods and one-inch wide along the southern boundary of the original forty acres. The circuit court determined the easement was two rods wide along the southern boundary of the original forty acres. The Wendtlands recovered a more favorable judgment because the court located the easement as they sought, rather than across the entire forty acre servient estate, and it was narrower than the offer of settlement by one inch. Whether a recovery is more favorable is not limited by § 807.01 to monetary amounts.

¶19    The Frahms also argue:

> Although the trial court order granted the easement as two rods wide and the settlement offered two rods plus one inch, the more favorable outcome should not be measured by the size of the granted easement. Rather, the favorability should be measured in accordance with the purpose of the statute: finality. In the event that the Frahms did accept the settlement offer, there would not be finality because post-litigation expenses and issues could have arisen such as an objection by Richard Ross or Roger Ross.

¶20    This argument is speculative as to what could have happened but did not occur regarding the Rosses. Here, a statutory offer of settlement was served upon the Frahms, individually, as well as upon the Trust, through its attorney. It is undisputed that the statutory offer of settlement was not accepted by the Frahms, individually, or by the Trust. The circuit court properly awarded double the amount of taxable costs in the amount of $3,003.36 against the Frahms and the Trust, as the Wendtlands recovered a more favorable judgment.

¶21    Costs were not awarded against Roger Ross or Richard Ross. Although Roger Ross and Richard Ross admitted service of the summons and

complaint, they did not enter an appearance, file an answer to the complaint or other responsive pleading, file cross-claims for indemnification, or otherwise file any pleadings in the litigation. The Rosses are thus bound by the circuit court's determination of the location and width of the easement, and they forfeited the right to contest the matter or to object to costs awarded pursuant to a declined statutory settlement offer served upon the Frahms, individually, and the Trust. *See State v. Ndina*, 2009 WI 21, ¶¶29-30, 315 Wis. 2d 653, 761 N.W.2d 612 (stating that forfeiture is the failure to make the timely assertion of a right).

¶22 Nevertheless, the Frahms argue that "[a]t the time the settlement offer was served upon the Defendants, there was no default judgment on the record entered against Roger Ross or Richard Ross." This argument is undeveloped, and the Frahms provide no citation to legal authority in support of it. We shall therefore not further address it. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶23 The arguments discussed above are the only arguments the Frahms raised on appeal regarding double costs. Significantly, the Frahms do not develop any argument regarding whether they should have liability for costs irrespective of the Trust. The Frahms also fail to develop an argument that they cannot be responsible for double costs because the Trust owned the dominant property, and therefore the Frahms, individually, could not have accepted the statutory offer of settlement to locate an easement two rods and one-inch wide along the southern boundary of the burdened property.

¶24 In this regard, we note that the complaint alleged at paragraph three that the Trust was the titled owner of the property benefitted by the easement. Attorney Dejan Adzic filed a notice of retainer in the circuit court representing

both the Frahms, as well as the Trust. Attorney Adzic also answered the complaint on behalf of both the Frahms and the Trust, and the answer admitted the allegations of paragraph three. Despite the stipulated fact that the Trust owned the property benefitted by the easement, the Frahms, individually, never moved for dismissal from the lawsuit. The Frahms remained parties in the case, and they were still defendants when the circuit court entered judgment determining the location and width of the right-of-way easement. The Wendtlands had made statutory offers of settlement, served upon "David J. Frahm, Sr., Constance J. Frahm and David Joseph Frahm, Sr. and Constance Jane Frahm Revocable Trust," through their joint attorney Dejan Adzic. The offers of settlement were not accepted, the Wendtlands recovered a more favorable judgment, and the court awarded double costs against the Frahms, individually, and the Trust.

¶25 To the extent any issues may exist regarding the legal differences between the Frahms and the Trust and the liability of the Frahms for costs irrespective of the Trust, the Frahms failed to raise the arguments on appeal. We will not abandon our neutrality to develop a party's arguments. *See M.C.I., Inc. v. Elbin*, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988).

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.